**Raymond Allen WORLEY, Appellant,**

v.

**The STATE of Texas.**

No. 2–94–141–CR.

Court of Appeals of Texas, Fort Worth.

Dec. 21, 1995.

Michael Logan Ware, Law Offices of Michael Logan Ware, Fort Worth, for Appellant.

Tim Curry, Criminal Dist. Attorney; Betty Marshall, Asst. Chief Appellate Section; Charles Mailin, Asst. Chief Appellate Section; Sylvia Mandel, Asst. Dist. Attorney, Lisa Amos, Asst. Dist. Attorney, Fort Worth, for Appellee.

Before DAY, DAUPHINOT and RICHARDS, JJ.

## OPINION

RICHARDS, Justice.

Appellant Raymond Allen Worley appeals his conviction for the offense of possession of a controlled substance. After a pretrial hearing where the trial court denied his motion to suppress evidence, Worley, after reserving his right to appeal the suppression issue, entered a plea of guilty and was sentenced to three years' confinement. This appeal followed. We affirm.

In two points of error, Worley complains of the trial court's denial of his motion to suppress. His specific complaint is that illegal drugs found in his possession were seized in violation of his rights under article 1, section 9 of the Texas Constitution [1] and the Fourth

---

1. "The people shall be secure in their persons,    houses, papers and possessions, from all unrea-

Amendment to the United States Constitution,[2] and should have been suppressed as "fruit" of an illegal search.

The issue requires us to address the legality of a Fort Worth police officer's actions that ultimately culminated in the seizure of three gelatin capsules containing heroin and cocaine found in Worley's possession.

## FACTUAL BACKGROUND

The officer whose actions are the subject of our review is Thomas Wiederhold, an eleven-year veteran of the Fort Worth Police Department. On a summer evening in 1993, Officer Wiederhold was working with the department's "Weed and Seed Unit," a special police unit created to assist in curtailing narcotics trafficking. Officer Wiederhold was driving a marked police vehicle and patrolling Missouri Avenue in an area known for its drug activity. Officer Wiederhold paid "special attention to" the house located at 1401 Missouri Avenue because of numerous previous narcotics arrests made at that location. Officer Wiederhold testified that he had become familiar with the residence during the year preceding the instant incident. He further testified he has previously established personal contact with the resident caretaker of that address, a man named Bill Henderson, who had confirmed the residence was used for drug activity. During prior visits to the residence, Officer Wiederhold learned the drugs used at that residence are packaged in small gelatin capsules.

On July 19, 1993, Officer Wiederhold drove to the residence and noticed a green Ford pickup truck stopped at the intersection of Missouri Avenue and Morphey Avenue. The general appearance of the vehicle and driver, according to Officer Wiederhold, was consistent with heroin and cocaine trafficking. As the officers approached the vehicle, the driver immediately moved the pickup and gave the officers "a good hard stare" as they drove by. At the suppression hearing, Officer Wiederhold explained the significance of the location of the pickup by stating that he had learned during his almost twenty years as a police officer that drug users purchasing illegal narcotics normally travel in pairs. As a general rule, one person operates the vehicle, drops off the passenger, then circles the block and retrieves the passenger. Based on his experience, Officer Wiederhold believed that a passenger retrieval was about to occur and that the location of the truck was consistent with someone who was circling the residence at 1401 Missouri.

While his partner wrote down the license number of the pickup, Officer Wiederhold began surveying the residence. When his patrol car was approximately fifteen feet from the curb in front of the residence, Officer Wiederhold observed a white male, later identified as Worley, walk out the front door and step onto the porch steps. Worley's head was down and his left hand was cupped and open. As Worley approached the street, Officer Wiederhold observed, from a distance of approximately twenty feet, three capsules in Worley's left hand. Officer Wiederhold testified that Worley was concentrating on what was in his hand and did not appear to realize that the police officers were present. Only after Worley neared the curb did he look up and see the officers. When he saw the officers, Worley froze and stared at them. Officer Wiederhold testified that Worley "was looking real nervous, looking scared."

Worley continued to stare at the officers as Officer Wiederhold exited the patrol car and began to approach him on foot. When Officer Wiederhold was within arm's length, Worley clenched his left hand and attempted to turn away. As he turned, Officer Wiederhold grabbed his left hand and asked him what was in it. Officer Wiederhold testified at the time he believed he knew what was in the hand and wanted Worley to open his

sonable seizures or searches, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause, supported by oath or affirmation." TEX. CONST. art. I, § 9.

**2.** "The right of the people to be secure in their persons, houses, papers, and effects against un-

reasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV.

hand. After what Officer Wiederhold described as "mild" resistance, Worley relinquished the gelatin capsules. Officer Wiederhold testified that when he was able to look at the capsules "close up," he concluded the capsules probably contained heroin and cocaine. He admitted he could never definitely determine from sight what substances the capsules contained and relied on lab reports for the definitive determination.

## WAS THE SEIZURE REASONABLE?

■ The Fourth Amendment does not, of course, provide guarantees against all searches and seizures, but only against unreasonable searches and seizures. *See Elkins v. United States*, 364 U.S. 206, 222, 80 S.Ct. 1437, 1446, 4 L.Ed.2d 1669, 1680 (1960).

Worley suggests Officer Wiederhold's seizure of the drugs in the instant case was unreasonable because it was preceded by his warrantless seizure of Worley's wrist. In Worley's view, the seizure of his wrist constituted an arrest. Because Officer Wiederhold admitted it was only *after* he grabbed Worley's wrist that he formed the belief the gelatin capsules contained heroin and cocaine, Worley argues the arrest was made without probable cause. In response, the State argues Officer Wiederhold had probable cause to arrest Worley from the moment he saw him in possession of a suspected controlled substance, *i.e.*, the moment Officer Wiederhold saw the gelatin capsules in Worley's hand as he exited the residence. Alternatively, the State argues the seizure of Worley's hand was reasonable as an investigative detention under *Terry v. Ohio*, 392 U.S. 1, 11 n. 5, 88 S.Ct. 1868, 1874 n. 5, 20 L.Ed.2d 889, 900 n. 5 (1968).

For the reasons explained below, we do not agree with the State that Officer Wiederhold had probable cause to arrest Worley at the time he seized his wrist; however, we do believe the seizure was reasonable as part of a valid *Terry* stop.

■ The Fourth Amendment principles governing the resolution of Worley's claims are easily stated, but their application to the unique facts of many cases, including this one, are not quite so simple. We have no doubt—and the State does not contest—that the encounter between Officer Wiederhold and Worley constituted a Fourth Amendment event. By seizing Worley's arm and opening his hand to view what was in it, Officer Wiederhold clearly effected a "seizure" of Worley's person and effects within the meaning of the Amendment. *Cf. Delaware v. Prouse*, 440 U.S. 648, 653–54, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660, 667 (1979). The first contested question, therefore, is whether the State is correct in its argument that Officer Wiederhold possessed the requisite probable cause to arrest Worley at the time he grabbed his wrist.

■ Probable cause to arrest exists where the facts and circumstances within the arresting officer's knowledge and of which he had reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to believe that an offense has been or is being committed. *Draper v. United States*, 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327, 332 (1959).

■ As authority for its position that Officer Wiederhold had probable cause to arrest Worley when he saw Worley carrying gelatin capsules in the palm of his hand, the State relies primarily on *Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). In fact, in its brief the State argues "this case is clearly controlled by *Texas v. Brown*." We disagree. In *Brown*, following a lawful traffic stop, a police officer saw a tied off balloon in the defendant's possession. Based on his knowledge and experience, the officer was aware that narcotics were frequently packaged in such balloons. Significantly, testimony in *Brown* clearly established that the defendant was placed under arrest only *after* the officer reached into the car, picked up the balloon, and determined it contained a powdery substance. In our case, however, the record clearly indicates Officer Wiederhold seized Worley's wrist before he inspected the capsules:

Q [Worley's counsel]: At what point did you believe the gelatin capsules contained heroin and cocaine?

A [Officer Wiederhold]: When I was able to get his hand open and actually look at them up close.

Because probable cause for Worley's arrest did not arise until the seizure and inspection of the capsules, we decline the State's invitation to hold Officer Wiederhold's seizure of Worley's wrist constituted an arrest supported by probable cause.

Unfortunately for Worley, our inquiry does not end here. Instead, we must next determine whether Officer Wiederhold's seizure of Worley's wrist was permissible under the lesser "reasonable suspicion" standard required for investigative detention under *Terry*.[3]

■ In *Terry*, the Supreme Court considered non-arrest seizures stemming from the "necessarily swift [police] action predicated upon the on-the-spot observations of the officer on the beat," and held that in order to justify "the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 20–21, 88 S.Ct. at 1879–1880, 20 L.Ed.2d at 905–06. *Terry* provides a narrow exception to the probable cause requirement that is reserved for police activity that does minimal violence to the sanctity of the person. "Reasonable suspicion" suffices for seizures within this category, *Dunaway v. New York*, 442 U.S. 200, 210, 99 S.Ct. 2248, 2257–58, 60 L.Ed.2d 824, 834 (1979), *Amores v. State*, 816 S.W.2d 407, 411 (Tex.Crim.App. 1991), and, as a general rule, the shorter the detention, the "less compelling is the evidence of the necessity for it that the authorities need to produce." *Villanova v. Abrams*, 972 F.2d 792, 796 (7th Cir.1992). One principle established in *Terry* is that a search is only validly within the Fourth Amendment if its scope is no broader than necessary to accomplish legitimate governmental objectives. *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 908–09.

Obviously line-drawing problems are presented in some instances in distinguishing an investigatory stop from a de facto arrest. *United States v. Sharpe*, 470 U.S. 675, 685, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605, 615 (1985). In addressing the sometimes difficult question of whether a particular fact situation requires probable cause for an arrest or the lesser reasonable suspicion standard for an investigative detention, one federal court noted:

What if the intrusion lies somewhere between *Terry* and arrest, neither a "brief, investigatory" stop nor a traditional arrest, where the defendant is handcuffed, trundled into a paddy wagon, carted to the station, fingerprinted, and held in a 12′ x 8′ cell? One answer would be to deny that there is a "between"—to insist that all encounters must be either *Terry* stops or arrests. Yet circumstances defy such simple categorization, and if a line must nonetheless be drawn it will be arbitrary, with nearly identical cases on opposite sides. Trying to force a continuous world into two categories is not only impossible but also unnecessary when the text of the Constitution calls for inquiry into "reasonableness."

*United States v. Chaidez*, 919 F.2d 1193, 1197 (7th Cir.1990), *cert. denied*, 501 U.S. 1234, 111 S.Ct. 2861, 115 L.Ed.2d 1028 *and* 502 U.S. 872, 112 S.Ct. 209, 116 L.Ed.2d 167 (1991).

■ We find the intrusion at issue in the instant case does not fall into the grey area of Fourth Amendment analysis presented in the theoretical situation envisioned by the reviewing court in *Chaidez*. The intrusion in our case was of very short duration, lasting only as long as it took Officer Wiederhold to seize Worley's left wrist and view the capsules contained in his hand. Once Officer Wiederhold had the opportunity to inspect the capsules, he then clearly had probable cause to make the arrest.[4] *See Brown*, 460

---

3. The Court of Criminal Appeals has interpreted article I, section 9 of the Texas Constitution consistently with the Fourth Amendment in determining whether police seizures, including *Terry* stops, are reasonable. *See Davis v. State*, 829 S.W.2d 218, 221 (Tex.Crim.App.1992). Therefore, our disposition of Worley's Fourth Amendment claim will necessarily control his claimed state constitutional violation.

4. Worley concedes that probable cause for his arrest existed after Officer Wiederhold was able to open his hand and look at the capsules; however, Worley strongly urges that we find the "arrest" occurred earlier, at the time Officer Wiederhold grabbed his wrist.

U.S. at 742, 103 S.Ct. at 1543, 75 L.Ed.2d at 513–14.

■ The circumstances supporting Officer Wiederhold's decision to undertake the stop in our case are compelling: (1) Worley was seen leaving under suspicious circumstances a residence known for illegal drug sales; (2) Officer Wiederhold had personal knowledge that drugs sold at the residence were packaged in capsule form; (3) Worley was seen walking from the door of the residence to the curb concentrating on three pills in capsule form visible in the palm of his hand; (4) when Worley first noticed the presence of the nearby officers, he froze and stared at them; and (5) when approached by Officer Wiederhold, Worley turned away and attempted to conceal the capsules.

In *United States v. Lender,* 985 F.2d 151, 154 (4th Cir.1993), the court held that the apparent interest of several suspects in viewing the open palm of the defendant's hand in a neighborhood known for its drug trade supported a *Terry* stop and the officers' suspicion that the defendant was engaged in a drug transaction was reasonable. Although probable cause for an arrest clearly was not present at the time the suspects were seen looking to the palm of the defendant's hand, the reviewing court in *Lender* held the patrolling police officers were not required to "shrug their shoulders and allow a crime to occur." *Id.* (citing *Adams v. Williams,* 407 U.S. 143, 145, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 616 (1972)).

■ Similarly, the emphasis Worley requests that we place on evidence that during his walk from the door to near the curb, the capsules seen in his hand could not be distinguished from other legal over-the-counter capsules is inappropriate. Many innocent explanations for Worley's actions could be hypothesized. Perhaps Worley was a door-to-door salesman who was given Tylenol pain capsules by a kind resident to soothe his aching head. Or perhaps, struck by the urge to take an evening walk, he was determined make good use of his time by taking an inventory of his pockets, which just so hap-

pened to contain three cold capsules. Officers are not required to rule out the possibility of innocent behavior before undertaking a *Terry* stop. *See Crockett v. State,* 803 S.W.2d 308, 311 (Tex.Crim.App.1991) (circumstances raising the suspicion of illegal conduct need not be criminal in themselves; rather, they may include any facts that render the likelihood of criminal conduct greater than it otherwise would be). Suspicious conduct is by its very nature ambiguous, and the principal function of an investigative stop is to quickly resolve that ambiguity. *See United States v. Kaplansky,* 42 F.3d 320, 327 (6th Cir.1994) (appendix) (per curiam)[5] (reasonable suspicion existed to stop defendant who followed 14–year–old girl more than once in his van even if the defendant could assert a plausible innocent explanation for his conduct). Had Worley's possession of the capsules been innocent, *e.g.,* had the capsules been Tylenol, the ambiguity presumably would have been quickly resolved during the *Terry* stop, with Worley thereafter free to go on his way.

■ We believe the circumstances present in the instant case, taken as a whole, provided Officer Wiederhold with reasonable suspicion to believe Worley was engaged in criminal activity and thus justified the investigatory stop. Worley's conduct, both before and after Officer Wiederhold left the patrol car, did nothing to allay the officers' earlier suspicion. When Officer Wiederhold tried to approach Worley, he attempted to evade him by clenching his fist and turning away. Evasive conduct, although stopping short of headlong flight, may be a factor supporting an officer's stop in a streetcorner encounter. *See Sharpe,* 470 U.S. at 682–83 n. 3, 105 S.Ct. at 1573 n. 3, 84 L.Ed.2d at 613 n. 3.

■ Finally, we note that in *United States v. Sokolow,* 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989), the Supreme Court addressed the question of whether, in addition to the requisite degree of suspicion, a lawful *Terry* stop also requires that less intrusive techniques (*i.e.,* not involving an actu-

---

5. The original panel opinion in this case was vacated and superseded by the instant opinion. In the appendix to the instant opinion, the court adopted in full the original panel opinion addressing the appellant's reasonable suspicion arguments.

al seizure) be unavailable. The Supreme Court answered that question in the negative, stating that such a rule would "unduly hamper the police's ability to make swift on-the-spot decisions" and "would require courts to indulge in unrealistic second guessing." *Sokolow,* 490 U.S at 11, 109 S.Ct. at 1587, 104 L.Ed.2d at 12. We do not believe the Court of Criminal Appeals's decision in *Amores* requires that we hold the seizure of Worley's arm by Officer Wiederhold constituted an arrest, rather than an investigative seizure. In *Amores,* the conclusion that the detention of the defendant rose to the level of an arrest was based on a number of factors not present in our case. Included among these factors in *Amores* were: (1) the defendant was forced to lie facedown on the pavement with his hands behind his back and was told he would be shot if he did not obey orders; (2) the police officer did not ask any questions before or during the seizure, which included a full search of the defendant's person and his vehicle; and (3) the detention was not brief. *Amores,* 816 S.W.2d at 409–10. The instant case, which involved the momentary seizure of Worley's wrist followed by an immediate examination of the contents of his left hand, was justified by the reasonable suspicions discussed above.

On these facts, we conclude that Officer Wiederhold's seizure of Worley's wrist in this case was reasonable and that no Fourth Amendment violation or state constitutional violation occurred.

DAUPHINOT, J., dissenting with opinion.

DAUPHINOT, Justice, dissenting.

The majority is correct in finding in its well-written and thoughtful opinion that Officer Wiederhold did not have probable cause to arrest Worley at the time he seized Worley's hand. And they are correct in holding the seizure of Worley's hand and forcing it open constituted a "seizure" of Worley's person and effects within the meaning of the Fourth Amendment. But I disagree with the majority's conclusion that the search of Worley by force and the seizure of his effects *was* reasonable as part of a valid *Terry*[1] stop.

The majority embarks on a dangerous path set to circumvent the clear mandate of the Fourth Amendment and article I, section 9 when they state, "Had Worley's possession of the capsules been innocent ... the ambiguity [of Worley's 'suspicious' conduct] presumably would have been quickly resolved during the *Terry* stop, with Worley thereafter free to go on his way." Is this not simply another way of saying that innocent people should not mind being searched?

Officer Wiederhold's actions and the majority's apparent approval of them raise two areas of concern: (1) Whether this court is abandoning the "immediately apparent" doctrine set out by the United States Supreme Court; and (2) Whether a seizure based on reasonable suspicion, but not probable cause, involves the right to search for contraband when the officer does not fear for his safety. It is without even addressing either of these concerns that the majority finds the search and subsequent seizure of the contents of Worley's hand valid as a *Terry* stop.

I agree with the majority that under *Terry* Officer Wiederhold violated no constitutional protection by initially detaining Worley. Where the majority and I part ways is with regard to the scope of this detention, which far exceeded the routine *Terry* stop and, instead, included a warrantless search of Worley's hand and, then, an additional seizure of the contents in his hand. A lawful detention under *Terry* may embrace the right to seize Worley, but it does not embrace the right to force Worley's hand open in order to determine whether Worley possessed contraband. This entailed conducting a search following the initial seizure of Worley, which was not a brief, nonintrusive pat down for weapons as contemplated by the Supreme Court in *Minnesota v. Dickerson.*[2]

Other facts that could have justified the search of Worley's hand and subsequent seizure of its contents are not present in this case. It must be remembered that the purpose of a limited weapons search following an investigative stop is not to discover evidence of a crime, but to allow the police officer to pursue the investigation without fear of vio-

1. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

2. 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993).

lence.[3] But in this case Officer Wiederhold made no pretense of searching Worley for weapons. His sole goal was to examine the capsules in Worley's hand because he was not sure what kind of capsules Worley held. Furthermore, the capsules were not abandoned, nor did Worley fail to acquiesce to the officers' authority because they did not give him instructions until after they had seized him. Finally, Officer Wiederhold's testimony that he was uncertain about what Worley was holding in his hand made it clear that the capsules did not fall within the rule that the law violation must be readily apparent. There is, then, no claim that contraband was in plain view or that it was immediately apparent Worley possessed contraband. There is no suggestion the search was consensual because Officer Wiederhold had to force Worley's hand open.

The majority relies on *United States v. Sokolow*[4] for the proposition that a lawful *Terry* stop does not require less intrusive techniques than "the momentary seizure of appellant's wrist followed by an immediate examination of the contents of his left hand." I respectfully submit that the majority misreads *Sokolow*. Sokolow was attempting to leave an airport and hail a taxi when an officer grabbed Sokolow's arm and moved Sokolow back onto the sidewalk. Sokolow was then escorted to the DEA office at the airport. Importantly, neither Sokolow nor his luggage was searched. Instead, Donker, the narcotics detector dog, sniffed the luggage and reacted to one of Sokolow's bags. The officers obtained a search warrant before executing any search.

The *Sokolow* court does, indeed, hold that a *Terry* stop does not require less intrusive means than physical seizure of a person's arm. Thus, Officer Wiederhold had the authority to seize Worley's arm. But the *Sokolow* court was only addressing the issue of whether the DEA agent could lawfully physically detain Sokolow. It does not address the question of whether an officer had authority to forcibly search a detained suspect's closed hand. The opinion in *Sokolow* does not suggest, nor should it be read to mean, that police officers may search a suspect by employing force when there is no element of fear for safety. Yet, the majority justifies Officer Wiederhold's forcing Worley's hand open by relying on this language from *Sokolow*.

Texas courts have recognized the rule laid down in *Dickerson* that "if a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons" under *Terry*.[5] In so holding, the Court required that the incriminating character of the contraband be "immediately apparent" during the frisk.[6] Both the Dallas court and the Waco court have held that if the incriminating character of the object was not clear until the officer had opened, rubbed, or pinched the object, the officer exceeded the permissible scope of *Terry* and the searches were unconstitutional.[7]

In the case before us, Officer Wiederhold had to force Worley's hand open "to get a better look" at the capsules so he could decide whether Worley possessed contraband. It is undisputed that this search of Worley's hand was not undertaken as part of any weapons search pat-down. Consequently, while the majority is correct in holding Officer Wiederhold had the authority to seize Worley, this authority does not embrace the right to execute a warrantless search by force for contraband.

For these reasons, I respectfully dissent.

3. *Davis v. State*, 829 S.W.2d 218, 220 (Tex.Crim. App.1992) (op. on reh'g).

4. 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989).

5. *Dickerson*, 508 U.S. at ——, 113 S.Ct. at 2137, 124 L.Ed.2d at 346.

6. *Id.*

7. *See id.* at ——, 113 S.Ct. at 2138, 124 L.Ed.2d at 346; *Graham v. State*, 893 S.W.2d 4, 8 (Tex. App.—Dallas 1994, no pet.); *Campbell v. State*, 864 S.W.2d 223, 226 (Tex.App.—Waco 1993, pet. ref'd).