Affirmed and Memorandum Opinion filed July 31, 2003
















Affirmed and
Memorandum Opinion filed July 31, 2003.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-01-01034-CR

____________

 

SEDRICK LAMB, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

__________________________________________

 

On Appeal from
the 248th District Court

Harris County, Texas

Trial Court
Cause No. 867,073

 

__________________________________________

 

                              M
E M O R A N D U M   O P I N I O N

            Appellant Sedrick
Lamb pleaded guilty to possession of narcotics weighing less than one
gram.  In his sole point of error,
appellant contends the trial court erred in denying his motion to suppress
evidence.  In support of this contention,
he argues:  (1) the officers lacked
reasonable suspicion to detain him; (2) the detention evolved into an arrest;
(3) the arrest was not supported by probable cause; and (4) the illegality of
the initial detention renders the “plain view doctrine” inappropriate under the
circumstances.  We affirm.








                                                             I. 
Background

            On January 25, 2001, appellant was arrested for
possession of cocaine weighing less than one gram.  Prior to trial, he filed a motion to suppress
evidence alleging violations of his constitutional and statutory rights.

            Houston Police Department Officer
James Price was the sole witness at the hearing on the motion to suppress.  Price testified regarding the detention,
subsequent arrest and search of appellant. 
According to Price, he and his partner were patrolling an area of Houston known for
high narcotics activity when they observed appellant engage in an apparent
hand-to-hand narcotics transaction. 
Price testified that he saw appellant reach into his mouth to retrieve
an object, and give it to another individual, who then apparently gave money to
appellant.  As a four-year veteran of the
Department, Price recognized this behavior as typical of a hand-to-hand
narcotics transaction.  As Price and his
partner approached in their vehicle, appellant and the other individual saw
them drawing near and began walking “briskly” in opposite directions.  Price and his partner followed appellant to a
nearby convenience store and requested that appellant “come here.”  Appellant looked back at the officers, both
of whom were in uniform, but ignored their repeated requests to halt.  Instead, he continued walking toward the
convenience store.  Price’s partner made
contact with appellant’s arm and asked him to “hold on a second.”  Appellant stopped, and Price and his partner
began questioning him.

            Price testified that appellant
appeared “extremely nervous.”  As
appellant talked to the officers, Price saw a small chunk of an off-white
substance in appellant’s mouth.  Price
believed it to be crack cocaine.  The
officers told appellant to “spit it out,” at which time appellant attempted to
swallow the substance.  Price recognized
this behavior as typical of an individual attempting to swallow contraband upon
apprehension.  The officers then applied
“pressure points” to appellant’s jaw area. 
Appellant struggled, but the officers held appellant and he eventually
spit out the substance.  The substance
field-tested positive for cocaine.

            The trial court denied appellant’s
motion to suppress and found that there was sufficient evidence to justify
appellant’s detention.  The court stated
that its ruling was based on Price’s testimony regarding the specific location
of the event, the time of day, and the fact that he saw appellant reach into
his mouth and remove an object in an apparent hand-to-hand narcotics
transaction.  Appellant then pleaded
guilty, subject to appeal of the trial court’s ruling.

                                                               II.  Discussion

                                                       A. 
Preservation of Error

            We first address the State’s
argument that appellant has waived his challenge to the trial court’s
ruling.  The State asserts that
appellant’s point of error on appeal fails to comport with his objection at
trial.  Specifically, the State argues
that because the hearing focused almost exclusively on the initial detention,
appellant’s contentions of illegal arrest and illegal search are not preserved
for our review.  To preserve an issue for
appellate review, the record must show that an objection was made with
sufficient specificity so as to make the trial court aware of the complaint,
unless specific grounds were apparent from the context; and the trial court
must rule on the objection, either expressly or implicitly.  Tex. R. App. P. 33.1; Gutierrez v. State, 36 S.W.3d 509,
510–11 (Tex. Crim. App. 2001).

            A motion to
suppress acts as a specialized objection.  Morrison v. State, 71 S.W.3d 821, 826 (Tex. App.—Corpus Christi 2002, no pet.).  In his motion, appellant alleged the actions
of the officers “violated [his] constitutional and statutory rights.”  The relevant portion of appellant’s argument
in his motion to suppress is set forth as follows:

2.         The
actions of the Houston Police department violated the constitutional and
statutory rights of the Defendant under the Fourth, Fifth, Sixth and Fourteenth
Amendments to the United States Constitution, Article I, Section 9 of the Texas
Constitution, and under Article 38.23 of the Texas Code of Criminal Procedure.

3.         Any
tangible evidence seized in connection with this case was seized without
warrant, probable cause or other lawful authority in violation of the rights of
Sedrick Lamb pursuant to the Fourth, Fifth, Sixth and
Fourteenth Amendments to the United States Constitution, Article I, Section 9,
10 and 19 of the Constitution of the State of Texas

4.         Therefore,
Defendant requests that the following matters be suppressed at trial of this
cause:

            a.         Any and
all tangible evidence seized by law enforcement officers or others in
connection with the detention and arrest of Sedrick
Lamb in this case or in connection with the investigation of this case, and any
testimony by the Houston Police Department or any other law enforcement
officers or others concerning such evidence.

            b.         Any other
matters that the Court finds should be suppressed upon hearing of this motion.

            Appellant’s mere references to the United
 States and Texas Constitutions, or to
various constitutional doctrines, are insufficient to preserve error on
appeal.  See Bell v. State, 90 S.W.3d 301, 305 (Tex. Crim.
App. 2002) (noting that “[i]t is not sufficient that
appellant raise only a general constitutional doctrine in support of his
request for relief”).  However, a general
objection may be sufficient to make the trial court aware of specific constitutional
provisions relied upon where the objection is apparent from the context.  See Cooper v. State, 961 S.W.2d 222, 228 (Tex. App.—Houston [14th
Dist.] 1997, pet. ref’d.).  At the hearing on the motion to suppress,
both the State and appellant questioned Price regarding the circumstances
surrounding appellant’s initial detention and subsequent arrest, as well as the
seizure of evidence.  In his closing
argument at the hearing, appellant’s counsel emphasized the illegality of the
initial detention, however, he made no mention of the legality of the arrest or
the seizure of evidence.  Thus,
appellant’s general objection was insufficient to preserve his illegal search
and illegal arrest arguments for appeal.

            The State argues that, because the
trial court explicitly based its ruling only on the legality of the initial
detention, appellant failed to obtain a ruling on his remaining contentions of
illegal arrest and inapplicability of the plain view doctrine.  A trial court’s ruling on a matter need not
be expressly stated if its actions or other statements unquestionably indicate
a ruling.  Gutierrez, 36 S.W.2d at 511; see
also Chappell v. State, 850 S.W.2d 508, 510 (Tex. Crim.
App. 1993).  A trial court may impliedly
overrule all issues in a pretrial motion to suppress where the court proceeds
with the admission of the offensive evidence. 
James v. State, 102 S.W.3d
162, 168–69 (Tex. App.—Fort Worth 2003, pet. filed).  After the hearing, the trial court explicitly
denied appellant’s motion to suppress and found that there was sufficient
evidence to justify appellant’s detention. 
The trial court then proceeded to receive appellant’s guilty plea.  These actions implied that the motion was
overruled on all incorporated issues under consideration.  Id.

            Because we find that appellant did
not sufficiently object to his arrest and the seizure of evidence in either his
motion to suppress or his argument to the trial court, appellant has waived
those issues for appeal.  See Tex.
R. App. P. 33.1.  However, even if
appellant had preserved the complaints for appeal, we conclude they are without
merit.

                                                         B. 
Standard of Review

            In reviewing a trial court’s ruling
on a motion to suppress evidence, we apply a bifurcated standard of
review.  Maxwell v. State, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002).  We give almost total deference to the trial
court’s determination of historical facts, while conducting a de novo review of the trial court’s
application of the law to those facts.  Id.

            During a motion to suppress hearing,
the trial court is the sole trier of fact. Id. Accordingly, the trial judge may
choose to believe or disbelieve all or any part of a witness’ testimony.  Id.  When, as here, no explicit findings of fact
are filed, we must view the 

 class=Section3>

evidence
in the light most favorable to the ruling and sustain the decision if it is
correct on any applicable theory of the law. 
Id.

               C.  Did the Officers Have
Reasonable Suspicion to Detain Appellant?

            Appellant first argues that the
officers’ reasons for detaining him amounted to no more than a “hunch” and that
the “mere suspicion” of criminal activity is insufficient to support
detention.  An officer may conduct a
brief investigative detention, or a “Terry
stop,” when he has a reasonable suspicion to believe that an individual is
involved in criminal activity.  Balentine v. State, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002) (citing
Terry v. Ohio, 392 U.S. 1, 21
(1968)).  The reasonableness of a
temporary detention must be examined in terms of the totality of the
circumstances and will be justified when the detaining officer has specific articulable facts, which, taken together with rational
inferences from those facts, lead him to conclude that the person detained
actually is, has been, or soon will be engaged in criminal activity.  Id.  Reasonable suspicion to detain requires less
information than is constitutionally required for probable cause to
arrest.  Crockett v. State, 803 S.W.2d 308, 311
(Tex. Crim. App. 1991). 

            Price testified that the facts known
to him at the time he initially detained appellant were as follows:  (1) the area was known for high narcotics
activity; (2) appellant was standing near a building where Price had made
several previous narcotics arrests;[1] (3) 

 class=Section4>

appellant
was engaged in an apparent hand-to-hand narcotics transaction with another
individual; (4) appellant reached into his mouth, retrieved an object, and gave
it to another individual; (5) that individual then apparently gave money to
appellant; (6) appellant saw the officers approach in their vehicle and briskly
walked away; (7) as the officers called to appellant to stop, he looked over
his shoulder, saw the uniformed officers, and continued to walk away.[2]  Reasonable suspicion for detention is
justified where an officer observes a detainee near an area where criminal
activity is known to have occurred, and that detainee appears nervous and walks
briskly away from the area.  Balentine, 71 S.W.3d at 768–69. 
Similarly here, appellant was observed in an area known for criminal
activity, engaged in an apparent hand-to-hand narcotics transaction.  When approached by uniformed police officers,
appellant began walking briskly away, ignoring their requests to stop.  These specific, articulable
facts, when taken together with rational inferences, demonstrate Price had reasonable
suspicion– not just a mere “hunch”–to believe appellant was engaged in criminal
activity, thus justifying an investigatory detention.  Id.[3]  In Worley
v. State, the court of appeals held reasonable suspicion existed where the
officer: (1) saw the detainee at a residence known for narcotics activity; (2)
observed the detainee leaving the residence with capsules visible in his hand,
and (3) the detainee turned away from the officers as they approached.  912 S.W.2d 869, 874 (Tex.
App.—Fort Worth 1995, pet. ref’d).  Similarly, appellant was observed in an area
known for narcotics activity, engaged in an apparent hand-to-hand narcotics
transaction, and walked away from the officers as they approached.  In 

 class=Section5>

view
of the totality of the circumstances, Price had reasonable suspicion to detain
defendant.  Id.

            In support of his argument that the
officers lacked reasonable suspicion to detain, appellant relies heavily on Cook v. State, 1 S.W.3d 722 (Tex.
App.—El Paso 1999, no pet.).  In Cook, the officer saw defendant standing
with another individual in an area known for high narcotics activity.  Cook,
1 S.W.3d at 723–24.  Defendant was
holding something in his left hand and appeared to be counting money with his
other hand.  Id.  at 724.  The officer recognized this behavior as
typical of a narcotics transaction.  Id.  The officer attempted to detain defendant,
and defendant resisted.  Id.  The court found that the officer did not have
reasonable suspicion to justify defendant’s detention.  Id. at 726.  The court
cited Gurrola v. State, 877 S.W.2d 300, 303 (Tex. Crim. App. 1994), for the following propositions: (1) the
reputation of an area alone could not serve as a basis for an investigatory
detention; (2) the circumstances of two people speaking on the street during
daylight hours is less suspicious than such an event occurring at night; and
(3) the act of an individual in walking away from an officer cannot itself
justify suspicion of criminal activity.  Cook, 1 S.W.3d at 725–26.[4]

            We find Cook distinguishable from the case at bar because appellant did not
simply gesture with one hand while holding something in the other hand.  Price witnessed an apparent hand-to-hand
transaction.[5]  Appellant reached into his mouth, removed an
object, 

 class=Section6>

and
gave it to another individual, who then apparently gave money to
appellant.  Considering the totality of
the circumstances, this distinction, together with the facts stated above,
leads us to conclude that Price had reasonable suspicion to detain appellant.

                               D. 
Did the Initial Detention Evolve into an Arrest?

            Appellant contends that Price’s
partner “grabbed” him and he was effectively under arrest rather than merely
detained and that such arrest was not supported by probable cause.[6]  

 class=Section7>

Under
Texas law, a
person is arrested when he is “actually placed under restraint or taken into
custody.”  Tex. Code Crim. Proc. Art. 15.22; Tran v. State, No.
74,040, 2003 WL 1799013, *5 (Tex. Crim. App. April 2, 2003) (not designated for publication); Vaughn
v. State, 983 S.W.2d 860, 862 (Tex. App.—Houston [14th Dist.] 1998, no
pet.).  The Court of Criminal
Appeals has interpreted this statutory definition to mean that an arrest occurs
when a person’s liberty of movement is restricted or restrained.  Amores v. State, 816 S.W.2d 407, 411 (Tex. Crim. App. 1991).[7]  Whether or not a person is under arrest is to
be determined based on all of the facts and circumstances surrounding the
detention.  Id. at 412.

            Price testified to the facts and
circumstances surrounding appellant’s initial detention.  He sought to question appellant regarding the
apparent hand-to-hand narcotics transaction. 
As appellant walked away from the approaching officers, Price’s partner
told appellant to “come here.”  Appellant
continued to walk away.  After Price’s
partner made contact with appellant’s arm, appellant stopped and turned toward
the officers.  Under these facts, we
cannot conclude that appellant was under custodial arrest at that time.  Appellant was not yet under restraint, nor
was he in custody.  Tex. Code Crim. Proc.
Art. 15.22.  The
officers were conducting an investigative detention for the purpose of
questioning appellant about his involvement in a possible hand-to-hand
narcotics transaction.  This type of
brief, interrogative detention was a permissible “Terry stop.”  See Terry, 392 U.S. at
21.  During a “Terry stop” an officer may even go so far as to grab a detainee’s
wrist to check his hand for contraband and still fall under the definition of
an initial detention rather than a custodial arrest.  Worley,
912 S.W.2d at 872–73. 
Considering all the facts and circumstances surrounding the detention,
the officer’s contact with appellant’s arm did not constitute a custodial
arrest.  Amores, 816
S.W.2d at 411.

            However, we do conclude that the
detention evolved into an arrest when the officers restrained appellant and
attempted to retrieve suspected contraband from appellant’s mouth.  Shortly after initiating questioning of
appellant as part of the initial detention, Price noticed a substance in
appellant’s mouth that he believed to be crack cocaine.  Price saw appellant attempt to swallow the
crack cocaine, and he and his partner began applying pressure to appellant’s
jaw area.  Appellant resisted and the
officers physically restrained him.  In Guzman v. State, the Court of Criminal
Appeals acknowledged that, where an officer believed the defendant was
swallowing contraband, the officer’s act of grabbing defendant by the throat
and ordering him to “spit it out” constituted an arrest.  955 S.W.2d 85, 86 n.2 (Tex.
Crim. App. 1997).  Similarly here, the officers saw appellant
attempt to swallow suspected contraband and physically restrained appellant
while applying pressure to his jaw area. 
At that time, considering all the facts and circumstances surrounding
the detention, appellant’s liberty of movement was clearly restricted or
restrained and appellant was effectively under arrest.  Amores, 816 S.W.2d at 411.  




 








                                 E. 
Was the Arrest Supported by Probable Cause?

            Appellant next argues that, even if
the initial detention was proper, the subsequent warrantless
arrest was illegal because the officers lacked probable cause.  Under state law, there are two primary means
to attack a warrantless arrest.  State
v. Steelman, 93 S.W.3d 102, 106
n.5 (Tex. Crim. App. 2002).  An accused may make a constitutional argument
under Article I, section 9 of the Texas Constitution, or he may make a
statutory argument under Texas Code of Criminal Procedure articles
14.01-14.05.  Id.

            In his motion to suppress, appellant
alleges that the actions of the officers violated his rights under Article I,
section 9 of the Texas Constitution. 
Appellant makes an additional argument in his brief that the facts of
this case do not fit the statutory requirements of Articles 14.01-14.04.  We address both issues together.

            If the accused makes a state
constitutional argument, then the proper inquiry is the reasonableness of the
seizure under the totality of the circumstances.  Steelman, 93 S.W.3d at 106 n.5.  If the accused makes a statutory argument,
the proper inquiry is (1) whether there was probable cause with respect to that
individual, and (2) whether the arrest fell within one of the statutory
exceptions.  Id.  One of the statutory exceptions, in Article
14.01(b), provides that, “[a] peace officer may arrest an offender without a
warrant for any offense committed in his presence or within his view.”  Tex.
Code Crim. Proc. Art. 14.01(b); Steelman, 93 S.W.3d at 107. 
Probable cause for a warrantless arrest under
article 14.01(b) exists where, at that moment, the facts and circumstances
within the officer’s knowledge and of which he has reasonably trustworthy
information are sufficient in themselves to warrant a man of reasonable caution
in the belief that a particular person has committed or is committing an offense.  Steelman, 93 S.W.3d at 107 (citing Beverly v. State, 792 S.W.2d 103, 105 (Tex. Crim. App.1990).

             The record reflects that, when asked what was
in his mouth, appellant tried to swallow the substance.  This action constituted a destruction of evidence.[8]  See
Sanders v. State, 855 S.W.2d 151, 153 (Tex.
App.—Houston [14th Dist.] 1993, no pet.). 
Once a suspect takes action indicating that he may swallow suspected
contraband, an officer has probable cause to seize appellant and prevent
destruction of evidence.  Id. 
Therefore, because Price observed appellant attempting to swallow
suspected contraband, Price had a reasonable belief that appellant had
committed or was committing a crime, and there was probable cause to arrest appellant
without a warrant pursuant to the statutory exception provided under article
14.01(b).

                                                                 F. 
Plain View

            Finally, appellant argues that the
evidence obtained was the result of an improper plain view search and
seizure.  The plain view seizure doctrine
requires that:  (1) law enforcement
officials have a right to be where they are, and (2) it must be immediately
apparent that the item seized constitutes evidence.  Horton v. California, 496 U.S. 128, 136–37 (1990); Ramos v. State,
934 S.W.2d 358, 365 (Tex. Crim. App. 1996).  Appellant contends that the State cannot meet
the first prong of the test because the officers observed what he later learned
to be contraband only as a result of an illegal detention.  Appellant argues that the officers did not
have the authority to be where they were when they observed the contraband in
plain view.  We have already determined
that the initial detention of appellant was proper based upon Price’s
reasonable suspicion that appellant engaged in a suspected hand-to-hand
narcotics transaction, and we have also already found that the officers’
attempt to prevent the destruction of evidence was permissible.  Accordingly, we do not address appellant’s
plain view argument.

                                                            III.  Conclusion

            In sum, we conclude that  Price’s
investigative detention of appellant was reasonable and justified under the
circumstances and that appellant’s subsequent arrest was supported by probable
cause.  The trial court did not abuse its
discretion in denying appellant’s motion to suppress evidence obtained as a
result of the detention and arrest.

            For the foregoing reasons,
appellant’s point of error is overruled.

 

 

                                                                                    

                                                                        /s/        Eva M. Guzman

                                                                                    Justice

 

Judgment rendered and Memorandum
Opinion filed July 31,
 2003.

Panel consists of Justices
Anderson, Seymore, and Guzman.

Do Not Publish — Tex. R. App. P. 47.3(b).

 

 

 











            [1]  The reputation of an area for narcotics
activity, standing alone, is insufficient to find reasonable suspicion.  Gamble v. State, 8 S.W.3d 452, 454
(Tex. App.—Houston [1st Dist.] 1999, no pet.).  However, the U.S. Supreme Court has observed:

 

An
individual's presence in an area of expected criminal activity, standing alone,
is not enough to support a reasonable, particularized suspicion that the person
is committing a crime.  But officers are
not required to ignore the relevant characteristics of a location in
determining whether the circumstances are sufficiently suspicious to warrant
further investigation.  Accordingly, we
have previously noted the fact that the stop occurred in a “high crime area” among
the relevant contextual considerations in a Terry
analysis.

 

Illinois v. Wardlow, 528 U.S. 199, 124
(2000) (citations omitted);.  Guzman
v. State, 955 S.W.2d 85, 90 (Tex. Crim. App.
1997) (noting that such a locale is an important factor when considering the
totality of the circumstances).





            [2]  A person’s nervous, evasive behavior is a
relevant factor in determining reasonable suspicion. Wardlow, 528 U.S. at 119–20.
Unprovoked flight upon noticing the police may justify an officer in suspecting
that an individual is involved in criminal activity.  See id.
(noting that “headlong flight is the consummate act of
evasion”); see also Gaines v. State,
99 S.W.3d 660, 667 (Tex. App.—Houston [14th
Dist.] 2003, no pet.)





            [3]  Appellant argues his conduct was “as consistent
with innocent activity as with criminal activity,” and would therefore be an
insufficient basis for reasonable suspicion. 
However, we note that this argument was explicitly overruled in Woods v. State, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997); See
Balentine, 71 S.W.3d at 769 n.6.





            [4]  The court of appeals in Cook discredited each of these facts on the basis that, standing
alone, they could not support reasonable suspicion.  The court then considered only the remaining
facts, the hand gestures witnessed by the officer, in its determination that
there was no reasonable suspicion to detain defendant.  We disagree with that court’s application of
the totality of circumstances test.  See Guzman, 955 S.W.2d
at 87.





            [5]  In arguing that there was no reasonable
suspicion to detain based upon an apparent hand-to-hand transaction, appellant
points to the following exchange during the cross examination of Price.

 

Q.  And that you believed that you saw money
transfer between Mr. Lamb and whoever the other person was, correct?

A.  I didn't say it was money for sure.  I said it was possible money.

Q.  You don't really know what you saw then at
that point, correct?

A.  Could have been anything.

 

. . . 

 

Q. You
can't testify that what you saw was a drug transaction, correct?

A.  All I can say is that it's possible.

Q.  You were making an assumption that a drug
transaction took place?

A.  It was a high narcotics area that I was in
and most incidents took place.

Q.  And you see this gentleman and the other
person in some type of transaction.  It
could have been shaking hands, correct?

A.  Could have been giving his gum.

Q.  Could have been giving his gum?

A.  Could have been buying his gum from him.

Q.  Correct. 
You don't see any money transferred so you don't know if any money was
involved in this?

A.  There you go.

Q.  Is that a legal answer?

A.  It could have taken place.  Could have given him
anything.

                                                            

            However, as the sole trier of fact and judge of the credibility of the witnesses
and the weight to be given their testimony, the trial court was free to believe
the officers’ testimony on direct examination that it “appeared that the
suspect took money from the other suspect and reached into his mouth and pulled
out something, handed it to the other suspect and handed him money.”  See State v. Ross, 32 S.W.3d
853, 855 (Tex. Crim. App. 2000).  Indeed, the trial court may believe or
disbelieve all or any part of a witness’s testimony, even if that testimony is
not controverted. 
Id.  This is so because it is the trial court that
observes first hand the demeanor and appearance of a witness, as opposed to an
appellate court which can only read an impersonal record.  Id.





            [6]  At issue during the hearing on the motion to
suppress was whether the officers “touched” or “grabbed” appellant.  During the cross examination of Price, the
following exchange took place:

 

Q.  It's at that time your partner made physical
contact with the defendant?  Your partner
grabbed his arm?

A.  That's correct.

However,
during Price's direct examination, the following exchange took place:

 

A.  My partner touched his arm as he was telling
him, Hold on a second, and I was walking around to him.

Q.  So did your partner walk up to the defendant?

A.  Yes, he did.

Q.  At that point is it your testimony he touched
the defendant's arm?

A.  That's right.

 

The trial
court is in the best position to resolve conflicts arising from any apparent
discrepancy in testimony.  Here, the
trial court, as the sole trier of fact and the judge
of the credibility of the witnesses may believe or disbelieve all or any part
of a witness’s testimony, even if that testimony is not controverted.  See
Ross, 32 S.W.3d at 855.





            [7]  The court’s definition of arrest under Amores has been recognized as “problematic” by
several lower courts.  Shipman v. State, 935 S.W.2d 880, 883
(Tex. App.—San Antonio 1996, pet. ref’d); see also, Dang v. State, 99 S.W.3d 172, 180 (Tex. App.—Houston [14th
Dist.] 2002, no pet.) (stating that the “restraint of
liberty” standard was not adequate when distinguishing between an arrest and a
detention because it is a characteristic common to both); and Worley, 912 S.W.2d at 874–75 (declining
to extend the Amores
definition of arrest where officer simply grabbed defendant’s hand to check for
suspected contraband).





            [8]  A person commits an offense if the person,
knowing that an offense has been committed, alters, destroys or conceals any .
. . thing with intent to impair its verity, legibility or availability as
evidence in any subsequent investigation of or official proceedings related to
the offense.  Tex. Pen. Code § 37.09(d)(1).