

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-15-00429-CR

---

MICHAEL NNAMANI                                          APPELLANT

V.

THE STATE OF TEXAS                                        STATE

----------

## FROM COUNTY CRIMINAL COURT NO. 6 OF TARRANT COUNTY
## TRIAL COURT NO. 1342673

----------

## DISSENTING OPINION

----------

Reasonable suspicion is not probable cause.[1] Probable cause provides grounds for search or arrest, with or without a warrant, depending on the exigency of the circumstances or the applicability of another exception to the

---

[1] *See Worley v. State*, 912 S.W.2d 869, 872 (Tex. App.—Fort Worth 1995, pet. ref'd).

warrant requirement.[2]  Reasonable suspicion, in contrast, provides a ground for temporary detention to allow for further investigation.[3]  But stopping Appellant did not provide the officer an opportunity to investigate whether Appellant was speeding because it would yield no evidence of that moving violation.  The conscientious majority addresses this conundrum, suggesting that

> the officer could have questioned Appellant about the speed at which Appellant believed—based upon his own speedometer reading—he was travelling.  Appellant's response could yield additional facts that convert reasonable suspicion into probable cause.[4]

Essentially, the majority is put in the position of holding that a police officer may detain a motorist for the sole purpose of attempting to secure a confession of wrongdoing.  But what about the transportation code sections requiring an officer who stops a motorist for speeding to release the motorist immediately upon the motorist's signing a promise to appear?[5]  The law is well-established that "the detention must be temporary and last no longer than necessary to effectuate the purpose of the intrusion."[6]  And how long is that, when the purpose of the detention is to secure a confession?  Until the motorist confesses?  Or

---

[2]*See* Tex. Code Crim. Proc. Ann. arts. 14.01–.04 (West 2015 & Supp. 2016); *Minnesota v. Dickerson*, 508 U.S. 366, 372, 113 S. Ct. 2130, 2135 (1993); *Torres v. State*, 182 S.W.3d 899, 901 (Tex. Crim. App. 2005).

[3]*Baldwin v. State*, 278 S.W.3d 367, 370 (Tex. Crim. App. 2009).

[4]Maj. Op. at 16.

[5]*See* Tex. Transp. Code Ann. §§ 543.003, 543.004(a)(1), 543.005 (2011).

[6]*Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997).

does the transportation code control, limiting the interrogation period to the time necessary for the motorist to sign his agreement to appear to answer to the suspicion of traveling at an unknown unreasonably high speed? If the motorist was detained for the purpose of securing a confession, was the motorist free to leave without responding to questions? That is, was the officer obligated to inform the motorist of his rights under *Miranda*?[7] Is this conduct truly consistent with the original intent of the framers of our constitution?

As for the officer's contention that Appellant may have committed a traffic offense by briefly straddling a lane line, we have addressed this issue in the past in a thorough and thoughtful discussion by Justice Gardner, who explained in part,

> The relevant provision of the transportation code—section 545.060(a)—provides as follows:
>
>> (a) An operator on a roadway divided into two or more clearly marked lanes for traffic:
>>
>>> (1) shall drive as nearly as practical entirely within a single lane; and
>>>
>>> (2) may not move from the lane *unless that movement can be made safely.*
>
> Although the statute has two subparts, it does not create two separate offenses, but rather only one: moving out of a marked lane when it is not safe to do so. In *Hernandez*, the Austin court analyzed the legislative history of section 545.060 and determined that because neither section 545.060 nor its predecessor created

---

[7]*Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966).

two offenses, the words "unless that movement can be made safely" necessarily modify both subsections, adding,

> [T]he very vagueness of the requirement that the operator of a vehicle drive within a single lane "as nearly as practical" indicates that the legislature did not intend for the initial clause of the statute to create a discrete offense apart from some element of unsafety. This conclusion is bolstered by the use of the term "practical" rather than "practicable." The latter term has a somewhat more definite meaning: "capable of being accomplished; feasible; possible," while the former term is more ambiguous: "manifested in practice; capable of being put to good use."[8]

Straddling a lane, as the officer described it here, did not constitute a traffic offense.[9] And the officer clearly stated that he did not stop Appellant because he saw him speeding; that is, the officer did not stop Appellant because he saw Appellant commit a traffic offense in his presence. Rather, the officer *suspected* that Appellant might be speeding. The scholarly majority has ably explained the often misunderstood distinction between probable cause and reasonable suspicion. If the officer observed Appellant commit a traffic offense, then the officer had probable cause to detain him.[10] If the officer had only reasonable

---

[8]*Fowler v. State*, 266 S.W.3d 498, 502–03 (Tex. App.—Fort Worth 2008, pet. ref'd) (citations omitted), *overruled on other grounds by State v. Varley*, No. 02-15-00076-CR, 2016 WL 4540491, at *7 (Tex. App.—Fort Worth Aug. 31, 2016, pet. filed).

[9]*See id.*

[10]*See Tucker v. State*, 183 S.W.3d 501, 507 (Tex. App.—Fort Worth 2005, no pet.) (citing Tex. Code Crim. Proc. Ann. art. 14.01; *Williams v. State*, 726 S.W.2d 99, 101 (Tex. Crim. App. 1986); and *Tyler v. State*, 161 S.W.3d 745, 748 (Tex. App.—Fort Worth 2005, no pet.)).

suspicion to detain Appellant, then the stop was perforce for the purpose of further investigation of the criminal activity that the officer suspected.[11]

Further, if the officer pulled Appellant over based only on a generalized suspicion that Appellant might be violating a traffic law, but the officer had no specific, articulable facts upon which to base a conclusion that he saw Appellant commit a traffic offense, then the record does not support the validity of the stop.[12]  An inarticulate hunch or intuition will not support a seizure.[13]  The officer had the opportunity to check Appellant's speed against his own speedometer to verify whether Appellant was violating the traffic law before stopping him but did not do so.

An officer who testifies to an unsupported general conclusion that a car was following another vehicle too closely has not testified to sufficient facts to justify a detention for a traffic violation.[14]   Similarly, the officer's testimony here that Appellant might have been speeding or might have been violating the traffic law requiring maintaining a single lane to the extent possible and not driving

---

[11]*Baldwin*, 278 S.W.3d at 370; *Terrell v. State*, 473 S.W.3d 420, 423 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (citing *Hiibel v. Sixth Judicial Dist. Court of Nev.*, 542 U.S. 177, 185, 124 S. Ct. 2451, 2458 (2004)).

[12]*Ford v. State*, 158 S.W.3d 488, 493–94 (Tex. Crim. App. 2005).

[13]*Wade v. State*, 422 S.W.3d 661, 668 (Tex. Crim. App. 2013).

[14]*Ford*, 158 S.W.3d at 493–94.

5

outside his lane unsafely was insufficient to justify a detention for a traffic violation.

Based on the record before this court, I cannot agree with my conscientious colleagues that the record as it stands supports the lawfulness of the seizure of Appellant.  For these reasons, I must respectfully dissent from the majority opinion.

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PUBLISH

DELIVERED:  November 17, 2016

6