

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00610-CR

---

THE STATE OF TEXAS                                                                          STATE

V.

JONATHAN MICHAEL MUNSEY                                                          APPELLEE

----------

FROM COUNTY COURT AT LAW NO. 2 OF WICHITA COUNTY

----------

## OPINION

----------

### I. INTRODUCTION

The State appeals from the trial court's written order granting Appellee Jonathan Michael Munsey's motion to suppress evidence. The State argues that the trial court incorrectly applied Texas Transportation Code section 545.058(a) to the facts of the case and failed to recognize Munsey's traffic violation under Texas Transportation code section 545.101. *See* Tex. Transp. Code Ann. § 545.058(a)

(West 2011) (captioned, "Driving on Improved Shoulder"), § 545.101 (West 2011) (captioned, "Turning at Intersection"). We will reverse.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Texas Department of Public Safety Trooper Patrick Timms stopped Munsey after witnessing his truck make a wide left turn onto the improved shoulder of northbound FM 369 from eastbound FM 367 in Wichita County. Munsey was charged with driving while intoxicated as a result of the stop. He filed a motion to suppress, alleging that the trooper did not have reasonable suspicion that Munsey had committed a traffic offense. At the suppression hearing, the State offered in evidence Trooper Timms's testimony and a videotape of the stop taken from the in-dash camera in his vehicle.

Trooper Timms testified as follows. At approximately 8:50 p.m. on a clear night, he was traveling northbound on FM 369 in Wichita County, approaching the intersection of FM 369 and FM 367. Both farm-to-market roads are two-lane roads with one lane of travel in each direction, and both roads have improved shoulders. The intersection is a four-way stop with blinking red lights.

As Trooper Timms approached the stop sign on northbound FM 369, Munsey's Ford pickup truck approached the stop sign on eastbound FM 367. Munsey had the right-of-way, having stopped at the stop sign first. Munsey's truck entered the intersection and turned left onto northbound FM 369.

Trooper Timms testified that Munsey "made an unsafe turn and drove onto the shoulder. All four tires made it onto the shoulder." Trooper Timms described the

2

turn: "The vehicle accelerated rapidly, and it seemed to me like [Munsey] was going to continue on 367, and then at the last minute [he] yanked the wheel and went north on 369 and then drove onto the shoulder." Trooper Timms said that the turn was unsafe due to "[t]he way that [Munsey] accelerated rapidly [and] then made a sudden turn."

Trooper Timms opined that there was no reason that made it necessary for the truck to travel on the right shoulder of FM 369. Trooper Timms had a clear and unobstructed view of the intersection and of the first fifty yards of northbound FM 369. There were no puddles of water, mud, or debris in the intersection or on FM 369 that made it unsafe or difficult to drive in the lane, and the lines of the intersection were clearly marked. No traffic was traveling southbound on FM 369 approaching the intersection. Trooper Timms testified that driving on an improved shoulder to the right of a roadway when it is either unnecessary or unsafe to do so violates transportation code section 545.058(a). He also testified that the manner in which Munsey turned left onto FM 369 violated section 545.101 of the transportation code.

On cross-examination, Trooper Timms testified that that there were no obstructions in the shoulder of FM 369, that Munsey did not "spin out his wheels" when he turned, that he did not hit anything, and that his tires did not "squeal out" or throw rocks at the trooper's windshield. Trooper Timms testified that there is nothing inherently unsafe about driving on the shoulder.

3

The videotape from Trooper Timms's in-dash camera begins with him driving on FM 369 for just under two minutes before approaching the intersection of FM 369 and FM 367.[1] The videotape shows Munsey's truck approach and stop at the stop sign on eastbound FM 367, enter the intersection of FM 367 and FM 369, and turn left to go northbound on FM 369. The improved shoulder of northbound FM 369 is marked with a solid white line on both sides of the intersection with FM 367. The videotape shows that Munsey made a wide turn onto FM 369, turning almost entirely (if not entirely) onto the shoulder of FM 369 just before the solid white line that demarcates the shoulder begins. Munsey continued driving on the improved shoulder, to the right of the solid white line, briefly before entering the northbound lane of FM 369.

The trial court granted Munsey's motion to suppress and entered findings of fact and conclusions of law. After the State appealed, we abated the appeal and remanded the case to the trial court for additional findings of fact.[2]

---

[1]Trooper Timms drove over the white line into the right shoulder twice during those two minutes. On cross-examination, Trooper Timms testified that he thought it was necessary to do so because he had once worked a double fatality at the particular curve where he drove on the shoulder and "it's a habit of [his] to go over on the shoulder to give [himself] a little bit of [room]." He did not explain his reason for crossing the white line the second time.

[2]*See State v. Mendoza*, 365 S.W.3d 666, 673 (Tex. Crim. App. 2012) (instructing appellate court to remand to trial court for additional findings on credibility and to clarify ambiguous factual findings); *State v. Elias*, 339 S.W.3d 667, 676–77 (Tex. Crim. App. 2011) (instructing appellate court to remand to trial court for additional findings on dispositive issue). We set out those original and supplemental findings and conclusions in our analysis below.

4

### III. STANDARD OF REVIEW AND LAW ON REASONABLENESS OF TRAFFIC STOPS

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). We review a trial court's determination of historical facts that is based on a videotape under the same deferential standard. *State v. Duran*, 396 S.W.3d 563, 570 (Tex. Crim. App. 2013); *Carter v. State*, 309 S.W.3d 31, 40 (Tex. Crim. App. 2010). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d

5

at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Kelly*, 204 S.W.3d at 818–19. We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id.* at 818. If the appellate court determines that the trial court's findings are ambiguous or insufficient to resolve the legal issue, then the case should be remanded to the trial court to make findings of fact with greater specificity. *Mendoza*, 365 S.W.3d at 670.

When the trial court grants a motion to suppress and files accompanying findings of fact and conclusions of law, and the sole witness at the motion to suppress hearing is the arresting officer, the only question before us is whether the trial court properly applied the law to the facts it found. *See State v. Gray*, 158 S.W.3d 465, 467, 469 (Tex. Crim. App. 2005); *Guzman*, 955 S.W.2d at 86–87, 89.

When a police officer stops a defendant without a warrant and without the defendant's consent, the State has the burden of proving the reasonableness of the stop at a suppression hearing. *Russell v. State*, 717 S.W.2d 7, 9–10 (Tex. Crim. App. 1986), *disapproved of on other grounds by Handy v. State*, 189 S.W.3d 296,

6

299 n.2 (Tex. Crim. App. 2006). An officer conducts a lawful temporary detention when he has reasonable suspicion to believe that an individual is violating the law. *See Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). Reasonable suspicion exists if the officer has specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaging in criminal activity. *Abney v. State*, 394 S.W.3d 542, 548 (Tex. Crim. App. 2013). The State need not establish with absolute certainty that a crime has occurred but must elicit testimony of sufficient facts to create reasonable suspicion of a traffic violation. *Id.*; *Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992).

## IV. REASONABLE SUSPICION OF VIOLATION OF SECTION 545.058

Transportation code section 545.058(a), captioned "Driving on Improved Shoulder," provides,

(a) An operator may drive on an improved shoulder to the right of the main traveled portion of a roadway if that operation is necessary and may be done safely, but only:

(1) to stop, stand, or park;

(2) to accelerate before entering the main traveled lane of traffic;

(3) to decelerate before making a right turn;

(4) to pass another vehicle that is slowing or stopped on the main traveled portion of the highway, disabled, or preparing to make a left turn;

(5) to allow another vehicle traveling faster to pass;

7

(6) as permitted or required by an official traffic-control device; or

(7) to avoid a collision.

Tex. Transp. Code Ann. § 545.058(a). Thus, section 545.058 allows for driving on an improved shoulder if it can be done safely and if it is necessary to achieving one of the seven approved purposes. *See id.* In *Lothrop v. State*, the court of criminal appeals examined section 545.058 and explained,

> [T]he offense of illegally driving on an improved shoulder can be proved in one of two ways: either driving on the improved shoulder *was not a necessary part of achieving one of the seven approved purposes*, or driving on the improved shoulder *could not have been done safely*. Merely driving on an improved shoulder is not prima facie evidence of an offense. Thus if an officer sees a driver driving on an improved shoulder, and it appears that driving on the improved shoulder was necessary to achieving one of the seven approved purposes, and it is done safely, that officer does not have reasonable suspicion that an offense occurred.

372 S.W.3d 187, 191 (2012) (emphasis added).

Here, the trial court originally entered the following findings of fact and conclusions of law:

- Timms testified that there was nothing inherently unsafe about driving a vehicle on an improved shoulder;

- Timms admitted that he drove his vehicle on the improved shoulder in a safe manner when he was approaching the intersection of FM 367 and FM 369;[3]

- Timms did not testify that Munsey failed to use his turn signal prior to turning his pickup left from FM 367 to FM 369;

---

[3] "Timms had previously worked a double fatality motor vehicle crash on that road."

- Munsey did not spin his tires when he pulled his pickup into the intersection of FM 367 and FM 369;

- Munsey did not execute an unsafe left hand turn from FM 367 to FM 369;

- Munsey drove his pickup on the improved shoulder of FM 369 in a safe manner as he accelerated before his pickup entered the main traveled lane of traffic on that road;

- Timms lacked reasonable suspicion to stop Munsey's pickup;

- Munsey's motion to suppress should be granted.

After the State appealed, we abated the appeal and remanded the case to the trial court for additional findings of fact. We explained in our abatement order that

> the trial court did not make specific findings of fact about the necessity requirement of section 545.058—that is, findings related to whether driving on the improved shoulder was a necessary part of achieving one of the seven approved purposes under section 545.058. *See* Texas Transp. Code § 545.058(a); *Lothrop*, 372 S.W.3d at 191. The trial court did not make a finding of fact with respect to the credibility of Trooper Timms's testimony as to the lack of necessity, *see Elias*, 339 S.W.3d at 676 (instructing that appellate court should have remanded to trial court for credibility determination), or other any findings of fact about whether driving on the improved shoulder was a necessary part of achieving one of the statutorily-approved purposes under section 545.058.[4]

The trial court then made the following additional findings of fact:

1.    Trooper Patrick Timms was driving a marked patrol vehicle southbound on FM 369 in Wichita County, Texas, on the night of February 4, 2012;

---

[4]*See Munsey v. State*, No. 02-12-00610-CR (Tex. App.—Fort Worth Dec. 20, 2013 order), *available at* http://www.search.txcourts.gov/SearchMedia.asp x?MediaVersionID=800d89016b164ea98e22e3430d002379&coa=coa02&DT=Or der&MediaID=8c330aa1-7983-4e50-9151-6040c8d0261f (last visited Feb. 21, 2014).

2.	Trooper Patrick Timms stopped at the intersection of FM 369 and FM 367;

3.	Trooper Patrick Timms'[s] in-car camera was operating on the night of February 4, 2012;

4.	As he approached the intersection Trooper Patrick Timms observed a pickup truck driving west on FM 367 which stopped at an appropriate location prior to entering the intersection;

5.	Trooper Patrick Timms later determined that the defendant Jonathon Michael Munsey was the driver of the pickup truck;

6.	Trooper Patrick Timms did not testify that the defendant Jonathon Michael Munsey failed to use his turn signal prior to entering the intersection and turning left;

7.	The defendant Jonathon Michael Munsey did not spin his tires when he drove his pickup truck into the intersection;

8.	The defendant Jonathon Michael Munsey did not execute an unsafe left hand turn from FM 367 to FM 369;

9.	The defendant Jonathon Michael Munsey failed to turn the pickup truck left so as to arrive in a lane lawfully available to traffic moving in the direction of the vehicle on FM 369—the roadway being entered;

10.	The defendant Jonathon Michael Munsey drove the pickup truck on the improved shoulder of FMM 369 in a safe manner as he accelerated before his pickup truck entered the single lane of traffic going south on that road;

11.	Trooper Patrick Timms'[s] testimony regarding the lack of necessity for the defendant Jonathon Michael Munsey to drive the pickup truck on the improved shoulder of FM 369 was credible;

12.	While Jonathon Michael Munsey drove his pickup on the improved shoulder of FM 369 in a safe manner as he accelerated before his pickup entered the single lane of traffic going south on that road, it was not a necessary part of

10

achieving one of the seven approved purposes set out in Section 545.058 of the *Texas Transportation Code*.

[Footnotes omitted.]

We will defer to the trial court's specific fact finding that Munsey drove his truck on the shoulder in a safe manner as supported by the record. *See Kelly*, 204 S.W.3d at 818–19. Trooper Timms testified that there is nothing inherently unsafe about driving on an improved shoulder and that there were no obstructions in the shoulder of FM 369. Trooper Timms did not testify to any specific, articulable facts that would lead him to reasonably conclude that it was unsafe for Munsey to drive on the improved shoulder of FM 369. *See Ford*, 158 S.W.3d at 492. The videotape also shows no obstructions or other facts making it unsafe to drive on the improved shoulder. Thus, Trooper Timms did not have reasonable suspicion to believe that Munsey violated section 545.058 by driving on the improved shoulder in an unsafe manner. *See* Tex. Transp. Code Ann. § 545.058(a).

But section 545.058 is also violated if a driver drives on an improved shoulder when doing so is not a necessary part of achieving one of the seven approved purposes, even when driving on the improved shoulder may be done safely. *See* Tex. Transp. Code Ann. § 545.058(a); *Lothrop*, 372 S.W.3d at 191. We will defer to the trial court's supplemental findings on lack of necessity as supported by the record. *See Kelly*, 204 S.W.3d at 818–19. Trooper Timms testified that there was no reason whatsoever for Munsey to drive on the shoulder; he explained that it was a clear night, that there were no puddles of water, mud, or debris in the northbound

11

lane of FM 369, and that there were no vehicles traveling southbound on FM 369 toward the intersection with FM 367. The trial court found Trooper Timms's testimony to be credible. The videotape also shows that there was no debris or obstacle in the intersection or on FM 369 and no traffic traveling southbound on FM 369 approaching the intersection. Nothing in the record shows that driving on the improved shoulder of northbound FM 369 was necessary for Munsey to accelerate before entering the main traveled portion of FM 369 or for any other purpose set forth in section 545.058(a). *See Lothrop*, 372 S.W.3d at 190 (explaining that section 545.058 does not require that driving on the shoulder be "*absolutely* necessary" to achieve one of the seven approved purposes but requires that driving on the shoulder be necessary to achieving one of the seven approved purposes); *see also Maldonado v. State*, No. 04-12-00228-CR, 2013 WL 2126383, at *5 (Tex. App.—San Antonio May 15, 2013, pet. ref'd) (mem. op., not designated for publication) (holding that officer had reasonable suspicion to believe driver had violated section 545.058(a) when record contained no evidence that driver's crossing over fog line to drive on improved shoulder was necessary for any statutory purpose listed in section 545.058(a)); *State v. Dietiker*, 345 S.W.3d 422, 425–26 (Tex. App.—Waco 2011, no pet.) (same); *Tyler v. State*, 161 S.W.3d 745, 749–50 (Tex. App.—Fort Worth 2005, no pet.) (same).

We hold that Trooper Timms had reasonable suspicion to believe that Munsey violated section 545.058(a) by illegally driving on the improved shoulder when it was

not a necessary part of achieving any of the approved statutory purposes.[5] *See* Tex. Transp. Code Ann. § 545.058(a); *Abney*, 394 S.W.3d at 548. Consequently, we hold that the trial court erred by granting Munsey's motion to suppress. We sustain the State's sole issue.

## V. CONCLUSION

Having sustained the State's sole issue, we reverse the trial court's order and remand for proceedings consistent with this opinion.

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL: GARDNER, WALKER, and MEIER, JJ.

PUBLISH

DELIVERED: February 27, 2014

---

[5]Having so held, we need not address the other alleged basis for the reasonable suspicion under transportation code section 545.101.

13