

# NUMBERS 13-13-00540-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| THE STATE OF TEXAS, | Appellant, |
| v. | |
| YESICA ATANAY CARRIZALES PIEDRA, | Appellee. |

### On appeal from the County Court at Law No. 8 of Hidalgo County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Perkes Memorandum Opinion by Justice Perkes**

Following a traffic stop, appellee Yesica Piedra was arrested for driving while intoxicated, a Class B misdemeanor. *See* TEX. PENAL CODE ANN. § 49.04 (West, Westlaw through 2013 3d C.S.). The State appeals the trial court's order granting Piedra's motion to suppress all evidence obtained from the traffic stop that preceded her

arrest.[1]   By two issues, the State contends the trial court erred in granting Piedra's motion to suppress because specific, articulable facts sufficiently demonstrated that reasonable suspicion existed to initiate a traffic stop:   (1) for unnecessarily driving on an improved shoulder in violation of section 545.058(a) of the Texas Transportation Code; and (2) for driving while intoxicated in violation of section 49.04 of the Texas Penal Code.   We reverse and remand.

## I.  BACKGROUND

Piedra filed a motion to suppress all evidence obtained as a result of her arrest for DWI, alleging that the arrest was "illegal."   At the hearing on the motion to suppress, Piedra's counsel stipulated that the sole issue before the trial court was whether the initial traffic stop was justified, not whether Piedra's arrest for DWI was supported by probable cause.   Trooper Claudia Meza, the only witness to testify at the suppression hearing, testified to the following facts.   On September 16, 2012 at 2:26 a.m., Trooper Meza noticed Piedra driving on the shoulder of U.S. Highway 83.   As she followed Piedra in her patrol car, Trooper Meza observed Piedra drive on the shoulder several times.   When Piedra exited the highway, she swerved and almost hit a barrier.   Trooper Meza then turned on her emergency lights and stopped Piedra for driving on the improved shoulder in violation of the Texas Transportation Code.   *See* TEX. TRANSP. CODE ANN. § 545.058(a) (West, Westlaw through 2013 3d C.S.).   Trooper Meza also stopped Piedra

---

[1] This appeal is brought pursuant to Texas Code of Criminal Procedure article 44.01(a)(5) which authorizes the state "to appeal an order of a court in a criminal case if the order . . . grants a motion to suppress evidence, a confession, or an admission, if jeopardy has not attached in the case and if the prosecuting attorney certifies to the trial court that the appeal is not taken for the purpose of delay and that the evidence, confession, or admission is of substantial importance in the case[.]"   TEX. CODE CRIM. PROC. art. 44.01(a)(5) (West, Westlaw through 2013 3d C.S.).

because the veering indicated that she may have been intoxicated, sleepy, or texting. Piedra was given several sobriety tests and was arrested for driving while intoxicated. The Trooper's dash camera video begins a few minutes prior to the stop. After viewing the video and hearing Trooper Meza's testimony, the trial court signed an order granting the motion to suppress.[2] The trial court later entered the following findings of fact and conclusions of law:

FINDINGS OF FACTS

1. Defendant Yesica Piedra is charged with driving while intoxicated.

2. Trooper [Claudia] Meza from the Texas Department of Public Safety was on patrol on September 16, 2012.

3. A hearing on a motion to suppress was held in County Court at Law No. 8 on August 30, 2013 and after hearing the evidence from the arresting officer Trooper Claudia Meza the Court granted the defendants [sic] [m]otion to [s]uppress.

4. The state filed a [m]otion to [r]econsider the [r]uling and a [n]otice of [a]ppeal.

5. There were two identified reasons for the stop, which were driving on an improved shoulder, and that the defendant veered to the right, almost striking a cement barrier which the [C]ourt was not in agreement and finds that the defendant did not drive on an improved shoulder as described by the Trooper, and the defendant did not veer to the right almost striking a cement barrier as described by the Trooper.

CONCLUSIONS OF LAW

1. The Court finds that Trooper Meza's testimony with regards to the stop on September 16, 2012, does not coincide with the video viewed by the [C]ourt.

---

[2] We note that the order reads "On this the 30 day of August 2013, came on to be heard the foregoing Motion to Suppress Statement of Defendant, and said Motion is hereby GRANTED." While the order refers to a motion to suppress *statements*, Piedra's motion sought the suppression of all evidence, including statements, obtained as a result of the detention.

2. The [C]ourt finds that there was no reasonable suspicion or probable cause to conduct a traffic stop or detain the defendant.

3. The [S]tate did not meet its burden in this case.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

When reviewing a trial court's ruling on a motion to suppress, we use a bifurcated standard of review; we give almost complete deference to the trial court's determination of the historical facts and review de novo the trial court's application of law to the facts. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). We apply this deferential standard to videotape evidence admitted at a suppression hearing when that videotape recording was used to determine the historical facts. *Tucker v. State*, 369 S.W.3d 179, 185 (Tex. Crim. App. 2012) (quoting *Montanez v. State*, 195 S.W.3d 101, 109 (Tex. Crim. App. 2006)). Although we may review de novo "indisputable visual evidence" in a videotape, we will defer to the trial judge's factual finding on whether a witness actually saw what was depicted on a videotape or heard what was said during a recorded conversation. *State v. Duran*, 396 S.W.3d 563, 570–71 (Tex. Crim. App. 2013); *see Carmouche v. State*, 10 S.W.3d 323, 332 (Tex. Crim. App. 2000). Because the trial court is the sole trier of fact, we view all evidence in a light most favorable to the trial court's ruling. *Carmouche*, 10 S.W.3d at 327.

The Fourth Amendment of the United States Constitution protects people against unreasonable searches and seizures by any government official, including police officers. U.S. CONST. amend. IV. To conduct a traffic stop in compliance with the Fourth Amendment, an officer must have "reasonable suspicion." *Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012). An officer has reasonable suspicion when he is "aware

4

of 'specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaging in criminal activity.'" *Id.* (quoting *York v. State*, 342 S.W.3d 528, 536 (Tex. Crim. App. 2011)). To determine if an investigative detention is reasonable, we look at whether the officer's action was justified at its inception, and whether the detention was reasonably related to the circumstances justifying the initial inference. *Terry v. Ohio*, 392 U.S. 1, 19–20 (1968). Normally, this inquiry poses no significant problems, because most traffic stops are made based upon the direct observations of unambiguous conduct or circumstances by the officer. *Duran*, 396 S.W.3d at 569. But sometimes an issue arises as to what the officer actually saw or knew at the time that he made a traffic stop. *Id.* Evidence obtained in violation of the Fourth Amendment must be suppressed. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23 (West, Westlaw through 2013 3d C.S.).

## III. DISCUSSION

The State argues that the trial court erred in granting Piedra's motion to suppress because Trooper Meza had a reasonable suspicion that Piedra was violating the Texas Transportation Code by unnecessarily driving on the improved shoulder and was driving while intoxicated.[3]

### A. Indisputable Visual Evidence

---

[3] The State also argues that the trial court did not enter findings of fact and conclusions of law sufficient for this Court to rule on. *See Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007) (quoting *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005) (finding when a trial court does not make explicit findings of fact in a ruling on a motion to suppress evidence, appellate courts "assume the trial court made implicit findings of fact supported by the record")). We disagree and conclude the trial court's findings of fact and conclusions of law are sufficient for appellate review.

As set out above, while we may review de novo "indisputable visual evidence" in a videotape, we will defer to the trial judge's factual finding on whether a witness actually saw what was depicted on a videotape or heard what was said during a recorded conversation. *Duran*, 396 S.W.3d at 570–71. Therefore, as a threshold matter, we must determine whether the trial court's findings of fact are such that we can review the dash camera video de novo as "indisputable visual evidence" under the principles set out in *Duran*.

The issue before the Court of Criminal Appeals in *Duran* was the deference afforded to the trial court's finding that an officer did not see the traffic violation which was clearly depicted in a dash camera video. *Id.* at 567. In *Duran*, the officer was on patrol when he received a domestic-violence dispatch call. *Id.* He responded to the call, driving at a high rate of speed, and running a red light, but he did not turn on his emergency lights or siren. *Id.* The defendant made a left turn in front of the officer who "then hit his brakes and, from the far-left lane, made a right turn . . . to follow [the defendant.]" *Id.* As the officer completed his turn, his dash camera video depicted the defendant's tire briefly crossing the center yellow line. *Id.* Two seconds later, the officer turned on his emergency lights and initiated a traffic stop. *Id.* After an investigation, the officer arrested the defendant for DWI. *Id.*

The trial court in *Duran* found that the officer "most probably did not even see the center stripe violation because he did not mention it in his report." *Id.* at 568. The trial court also found "it to be totally beyond all credibility to assume that an officer, while speeding and running red lights to respond to an assault family violence call, would abandon that call, turn right from the far left lane and pull up behind a driver (who at that

6

time committed no infractions) just to see if he might then commit one." *Id.* The trial court granted the defendant's motion to suppress, concluding that the officer "made this stop solely on the basis of [the defendant's] left turn." *Id.*

Reviewing the case de novo, the El Paso Court of Appeals reversed the trial judge's decision, because the dash camera video clearly showed the defendant's tire cross the center line providing an objective justification for the stop. *Id.* at 572. The Court of Criminal Appeals reversed, noting that "the court of appeals failed to give 'almost total deference' to the trial judge's implied fact finding that [the officer] did not see the center stripe violation—a finding that is based on an evaluation of credibility, not one that is contradicted by 'indisputable visual evidence.'" *Id.* at 573. The court explained that the video evidence "supports the very real possibility that [the officer] did not actually see [the defendant's] 'center stripe violation' before he initiated the stop two seconds later, as he had not even completed his own right-hand turn." *Id.* The court agreed with the State that there was "indisputable visual evidence" that the center stripe violation occurred, but explained there is no "indisputable visual evidence" that the officer saw the violation. *Id.* Because the record supported the trial judge's factual finding on this point, the court upheld the trial court's suppression ruling. *Id.* at 573–74.

Here, after viewing the video at the suppression hearing, the trial court explained the vehicle "crosses the lines, yes, but I don't think it's enough for a stop." In its findings of fact, the trial court found "that the defendant did not drive on an improved shoulder as described by the Trooper, and the defendant did not veer to the right almost striking a cement barrier as described by the Trooper." The trial court also found that Trooper Meza's testimony "did not coincide" with the video evidence. However, contrary to the

trial court's findings in *Duran*, the trial court here issued no findings regarding whether Trooper Meza witnessed what was depicted in the video or whether Trooper Meza's stated reason for initiating the traffic stop was credible or not. Rather, the trial court's findings reflect that it did not consider Piedra's actions depicted in the video to be a violation of the traffic laws. We believe this case is similar to *Carmouche v. State*, 10 S.W.3d 323 (Tex. Crim. App. 2000).

In *Carmouche*, the Court of Criminal Appeals reviewed video evidence in determining whether the search of defendant was justified under the "consent" exception to the probable cause requirements. *Id.* at 331. The court concluded that "the nature of the evidence presented in the videotape does not pivot on an evaluation of credibility and demeanor. Rather, the videotape presents indisputable visual evidence contradicting essential portions of [the officer's] testimony." *Id.* at 332. The court noted the following from its review of the video evidence:

> On the side of a darkened highway, appellant was closely surrounded by four police officers who had him backed up against the hood of his car. Officers told appellant to turn around and put his hands on the car. Only after appellant had assumed such position, and as he was reaching for appellant's pants, did [the officer] "ask," "Mind if I pat you down again?" Moreover, appellant was never told during this exchange that he had a right to refuse consent. Finally, appellant had already been searched once involuntarily during the earlier *Terry* frisk. Taken together with all of the other circumstances, this could have led a reasonable person to conclude that the second search, like the previous one, was not optional.

*Id.* at 332–33 (internal citations omitted). The court explained "we cannot blind ourselves to the videotape evidence simply because [the officer's] testimony may, by itself, be read to support the Court of Appeals' holding." *Id.* at 332. As a result of the court's review of the video evidence it held "that the record does not support the Court of Appeals' finding

of clear and convincing evidence that appellant's consent, if given at all, was free and voluntary." *Id.* at 333.

Like *Carmouche*, the question to be resolved by this Court does not pivot "on an evaluation of credibility and demeanor." Rather, the dash camera video presents "indisputable visual evidence" concerning whether Trooper Meza had reasonable suspicion to conduct a traffic stop. We conclude that, under these facts, we may review de novo the dash camera video to determine the issues raised in this appeal.

**B.   Reasonable Suspicion for Violation of the Texas Transportation Code**

Having established the proper standard of review, we now turn to the State's argument that specific, articulable facts sufficiently demonstrated reasonable suspicion existed to initiate a traffic stop for unnecessarily driving on an improved shoulder in violation of Texas Transportation Code section 545.058(a). *See* TEX. TRANSP. CODE ANN. § 545.058(a).

An officer who has a reasonable suspicion that a person is violating or has violated traffic laws has reasonable suspicion to stop and detain that person. *Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992). Texas Transportation Code section 545.058(a), entitled "Driving on Improved Shoulder," allows a person to drive their vehicle on the improved shoulder only if it is necessary and can be done safely for one of seven reasons: (1) to stop, stand, or park; (2) to accelerate before entering the main traveled lane of traffic; (3) to decelerate before making a right turn; (4) to pass another vehicle that is slowing or stopped on the main traveled portion of the highway, disabled, or preparing to make a left turn; (5) to allow another vehicle to travel faster to pass; (6) to comply with permitted or required official traffic-control devices; or (7) to avoid collision. TEX. TRANSP.

CODE ANN. § 545.058(a). If a person drives a vehicle on the improved shoulder, and it is not necessary to achieve one of the seven listed purposes, even if the driving is done safely, section 545.058(a) is violated. *State v. Munsey*, 424 S.W.3d 767, 771 (Tex. App.—Fort Worth 2014, no pet.).

We find *State v. Munsey* instructive to this appeal. 424 S.W.3d at 767. In *Munsey*, the Second Court of Appeals held that the trial court erred by granting the defendant's motion to suppress evidence surrounding his arrest, including dash camera video footage. *Id.* at 774. The trooper's video began two minutes before the traffic stop and showed the defendant driving on the shoulder in violation of Texas Transportation Code section 545.058(a). *Id.* at 769. The trial court suppressed the evidence despite finding that the defendant was driving on the improved shoulder; that the defendant did not fit one of the seven exceptions set out in section 545.058(a); and that the trooper's testimony was credible. *Id.* at 774. On appeal, the court concluded the trooper had reasonable suspicion to believe the defendant violated section 545.058(a), even though the defendant did not do so in an unsafe manner. *Id.* at 771.

Like *Munsey,* the video shows Piedra driving on the improved shoulder multiple times and, even if she did so safely, it is still a violation of Texas Transportation Code section 545.058(a). *See id.* at 771. The video depicts Piedra driving partially on the improved shoulder on multiple occasions as she exits one highway to another. She does so as she is rounding a corner and again as the exit lane straightens out and enters the adjoining highway. Piedra can then be seen changing lanes into an exit lane taking her off the highway. She drives almost entirely on the improved shoulder very close to a concrete barrier before returning to her lane. She does so despite the road being straight

10

and having a dedicated lane to exit. At no point does she use the improved shoulder to decelerate before making a right turn. Traffic throughout the video is light, and none of the other exceptions under section 545.058(a) are implicated by her use of the improved shoulder.

## C. Summary

Where "the nature of the video evidence does not pivot on an evaluation of credibility and demeanor[,]" and where the trial court makes no finding that a witness did not actually see what was depicted in the video, it is acceptable to view the video evidence de novo. *See Duran*, 396 S.W.3d at 570–71; *Camouche*, 10 S.W.3d at 332. Based on our review of the indisputable visual evidence, we conclude that Trooper Meza had reasonable suspicion to believe that Piedra violated section 545.058(a) and that the stop was not unreasonable. We sustain the State's first issue.[4]

## IV. CONCLUSION

We reverse the trial court's order granting Piedra's motion to suppress and remand for further proceedings consistent with this opinion.

GREGORY T. PERKES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
25th day of June, 2015.

---

[4] Because the State's first issue is dispositive, we need not address the State's second issue.

11