

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-15-00076-CR

THE STATE OF TEXAS                                                            STATE

V.

CAMERON WILLIAM VARLEY                                              APPELLEE

----------

FROM COUNTY CRIMINAL COURT NO. 7 OF TARRANT COUNTY
TRIAL COURT NO. 1333677

----------

## MEMORANDUM OPINION[1]

----------

Appellee Cameron William Varley filed a motion to suppress the State's evidence. After an evidentiary hearing, the trial court granted Appellee's motion. The State appeals. We reverse and remand.

---

[1]*See* Tex. R. App. P. 47.4.

## I. Background

By information, the State charged Appellee with driving while intoxicated. Appellee filed a motion to suppress in which he argued, among other arguments, that the stop of his car was illegal because it was made without a warrant and without reasonable suspicion in violation of the Fourth and Fourteenth Amendments of the United States Constitution and of section 9 of article I of the Texas Constitution. U.S. Const. amends. IV, XIV; Tex. Const. art. I, § 9. The trial court found that there was no reasonable suspicion to make the stop. Accordingly, the case turns on whether there was reasonable suspicion to make the initial stop.

## II. The Hearing on the Motion to Suppress

The State called Officer Brandon Gilbert of the Arlington Police Department. He was on duty around 2:11 a.m. on May 23, 2013, when he saw Appellee traveling southbound on Cooper Street. Officer Gilbert said that from a distance, he saw Appellee's white Toyota pickup stopped at an intersection. Appellee tapped his brakes, and the back passenger brake light did not illuminate. Officer Gilbert testified that vehicles are required to have at least two brake lights on the rear of the vehicle, so he concluded that he saw a traffic offense. Appellee then proceeded through the intersection towards the frontage road of Interstate 20. Officer Gilbert said he generally waited until a vehicle stopped a second time to confirm a light violation. He continued to watch Appellee, but as he watched, he noticed the vehicle weave back and forth from

2

side to side while remaining within its lane. Officer Gilbert acknowledged that weaving within the lane would not necessarily be enough to pull someone over, but because he had already observed the brake light violation, he decided to pull Appellee over. When Appellee braked to pull over and stop, Officer Gilbert said he confirmed the brake light was out. The video of the stop and arrest was admitted and played. Officer Gilbert acknowledged that Appellee did not brake at all during the video, but he explained that the videotape only went back one minute.

Officer Gilbert said the statute Appellant violated was written to require two brake lights. He said he did not consider the brake light in the center of the rear cab window because it was not affixed to the rear of the vehicle. Officer Gilbert testified he had reasonable suspicion that Appellee had committed an offense. The prosecutor indicated the State was relying on section 547.323 of the transportation code. *See* Tex. Transp. Code Ann. § 547.323 (West 2011).

During its final arguments on the motion to suppress, the State went straight to the statute, "Well, first of all that statute says [t]hat a vehicle shall be equipped with two rear lamps for braking purposes." The State identified the offense as "failing to have two rear brake lights." The State then returned to its position that the totality of the circumstances showed that Appellee had possibly committed the offense of failing to have two operable brake lights. The State conceded that the weaving within the lane of traffic did not support the

3

reasonable suspicion for the stop but went, instead, towards whether Officer Gilbert had probable cause to arrest Appellee.

The trial court ruled as follows:

> [A]s to the probable cause [after the stop], I think there's shaky grounds, but I would follow the State's argument. However, I am making a finding that there was no reasonable suspicion to stop because—and grant the motion to suppress, because the statute, I believe, is unclear. It—There was a second stop lamp. And the statute clearly says that stop lamps shall be mounted on the rear of the vehicle. But it—You know, what's the rear? The cab? The rear is the bed? I don't know. I think that stoplight is even bigger and shinier and more—Well, it's higher up so it's more noticeable. So I'm just going to go with that. That he had two stop lamps. And I'm granting the motion to suppress.

The trial court's order granting the motion does so without specifying any reasons. The State did not request and the trial court did not make formal findings of facts and conclusions of law.

### III. The State's Points

In its first point, the State argues that the trial court mistakenly interpreted section 547.323 of the transportation code. *Id.* In its second point, the State argues that the trial court, by granting Appellee's motion to suppress, ran afoul of *Terry v. Ohio* and its progeny. 392 U.S. 1, 88 S. Ct. 1868 (1968). In its third point, the State argues the trial court misapplied the Fourth Amendment reasonable-suspicion jurisprudence to the facts of this case. The State briefed its three points collectively. We address them collectively as well.

4

## IV. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

When reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Kelly*, 204 S.W.3d at 818–19. We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id.* at 818.

A trial court's findings on a motion to suppress may be written or oral. *Cullen*, 195 S.W.3d at 699. Even where neither party moved for written findings of fact and conclusions of law and none were filed, if it is apparent from the record that the trial court intended its findings and conclusions to be expressed via its oral pronouncements, then the oral findings of fact can be considered as findings of fact on the record and given due deference. *See, e.g., id.* (stating that trial court's findings and conclusions from the suppression hearing must be recorded in some way, whether written and filed by the court or stated on the record at the hearing); *Hauer v. State*, 466 S.W.3d 886, 890–91 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *Flores v. State*, 177 S.W.3d 8, 13 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (reviewing trial court's oral findings of fact on motion to suppress), *cert. denied*, 547 U.S. 1152 (2006). We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason

6

for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

When a police officer stops a driver without a warrant and without the driver's consent, the State has the burden of proving the reasonableness of the stop at the suppression hearing. *State v. Munsey*, 424 S.W.3d 767, 771 (Tex. App.—Fort Worth 2014, no pet.). An officer conducts a lawful temporary detention when he has a reasonable suspicion to believe that a person is violating the law. *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App.), *cert. denied*, 132 S. Ct. 150 (2011); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005); *Munsey*, 424 S.W.3d at 771. Reasonable suspicion exists if the officer has specific articulable facts that, when combined with rational inferences from those facts, would lead the officer to reasonably suspect that a particular individual has engaged or is (or soon will be) engaging in criminal activity. *Ford*, 158 S.W.3d at 492; *Munsey*, 424 S.W.3d at 771. The State does not have to establish with absolute certainty that a crime has occurred but must elicit testimony of sufficient facts to create a reasonable suspicion of a traffic violation. *Munsey*, 424 S.W.3d at 771. The reasonableness of the officer's suspicion is gleaned only from information known to the officer at the time of the detention. *See Crain v. State*, 315 S.W.3d 43, 52–53 (Tex. Crim. App. 2010). The standard is purely objective and does not take into account the officer's subjective intent. *Ford*, 158 S.W.3d at 492.

7

## V. Discussion

### A. Section 547.323 Requires Two Brake Lights with One Mounted on the Rear of the Vehicle

Section 547.323 provides:

(a) Except as provided by Subsection (b), a motor vehicle, trailer, semitrailer, or pole trailer shall be equipped with at least two stoplamps.[2]

(b) A passenger car manufactured or assembled before the model year 1960 shall be equipped with at least one stoplamp.

(c) A stoplamp shall be mounted on the rear of the vehicle.

(d) A stoplamp shall emit a red or amber light, or a color between red and amber, that is:

(1) visible in normal sunlight at a distance of at least 300 feet from the rear of the vehicle; and

(2) displayed when the vehicle service brake is applied.

(e) If vehicles are traveling in combination, only the stoplamps on the rearmost vehicle are required to emit a light for the distance specified in Subsection (d).

(f) A stoplamp may be included as a part of another rear lamp.

Tex. Transp. Code Ann. § 547.323.

"'The cardinal rule of statutory construction is to implement the will of the Legislature.'" *Schwintz v. State*, 413 S.W.3d 192, 193 (Tex. App.—Beaumont 2013, pet. ref'd) (quoting *Baird v. State*, 398 S.W.3d 220, 228 (Tex. Crim. App.

---

[2]The statute refers to brake lights as "stoplamps." Because "stoplamps" is antiquated, for purposes of clarity, we generally refer to them elsewhere in the opinion as "brake lights" unless we are referring to the statute specifically, where we retain the use of "stoplamps."

8

2013)).  When construing language, courts always begin with the literal text, reading it in context and construing it according to the rules of grammar and common usage.  *Id.*  Courts assume that every word was meant to serve a discrete purpose that should be given effect.  *Id.*  Courts must adhere to the plain language of a statute that is clear on its face unless implementation would lead to absurd consequences that the Legislature could not have possibly intended.  *Id.*

The trial court stated, "[T]he statute clearly says that stop lamps shall be mounted on the rear of the vehicle."  The trial court also considered the brake light on the rear of cab to count toward the two-brake-light requirement.  To the extent the trial court agreed that section 547.323 requires two brake lights on the rear of the vehicle and that the rear of Appellee's cab was sufficient to satisfy the rear-of-the-vehicle requirement, we disagree.  The rear of the cab of a pickup is nowhere near the rear of the vehicle.  Nevertheless, we must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling.  *See Stevens*, 235 S.W.3d at 740.

Regarding the construction of section 547.323 of the transportation code, subsection (a) requires two brake lights.  Tex. Transp. Code Ann. § 547.323(a).  Appellee had two brake lights.  Subsection (c) provides, "A stoplamp shall be mounted on the rear of the vehicle."  *Id.* § 547.323(c).  "A stoplamp," that is, only one brake light, has to be mounted on the rear of the vehicle.  *A*, Webster's Third New Int'l Dictionary (2002) ("3a:  ONE . . . b—used as a function word to suggest

9

limitation in number"). Even within section 547.323, the Legislature showed it knew the distinction between singulars and plurals. *See* Tex. Transp. Code Ann. § 547.323(a)–(f). It would have been a simple matter for the Legislature to have written, "The stoplamp under section (b) or the stoplamps under section (a) shall be mounted on the rear of the vehicle." Regarding taillamps, the Legislature did precisely that in the section immediately preceding section 547.323. *See id.* § 547.322(c) (West 2011) ("Taillamps shall be mounted on the rear of the vehicle . . . ."). There is nothing absurd about requiring two working brake lights, one of which must be on the rear of the vehicle and the other—the backup—somewhere else. The statute expressly anticipates and authorizes only one brake light for cars manufactured before 1960. *Id.* § 547.323(b). Appellee indisputably had at least one working brake light mounted on the rear of his vehicle and two brake lights overall. We hold that Appellee did not violate subsections (a) and (c) of section 547.323.

We are aware of cases that cite section 547.323 for the proposition that two brake lights must be on the rear of a vehicle. For example, in *Morin v. State*, the officer stopped the defendant because "her high-mounted center taillamp was not working." No. 07-14-00101-CR, 2015 WL 7231100, at *1 (Tex. App.—Amarillo Nov. 16, 2015, no pet.) (mem. op., not designated for publication). The trial court relied on section 547.3215 of the transportation code, which required vehicles to comply with the federal standards. *Id.* at *2 (citing Tex. Transp. Code Ann. § 547.3215 (West 2011)). However, in a footnote supporting this assertion,

10

the court cited section 547.323 for the proposition that "a motor vehicle [must] be equipped with at least two rear-mounted stoplamps." *Id.* at \*2 n.4. Thereafter, within the same footnote, the court cited (1) section 547.3215, which requires compliance with the federal standards and (2) *Schwintz* for the proposition that the federal standards require a high-mounted center taillamp in addition to two stoplamps. *Id.* (citing *Schwintz*, 413 S.W.3d at 192). Because section 547.3215 of the transportation code was dispositive, any discussion of section 547.323 in *Morin* was dictum.

In *Schwintz*, the court wrote, "The Austin Court has treated the center high-mounted stop lamp as an additional requirement that is separate from and in addition to the two rear-mounted stop lamps required by section 547.323(a)." 413 S.W.3d at 194. However, section 547.323(a) requires "two stoplamps" without specifying where they must be placed. *See* Tex. Transp. Code Ann. § 547.323(a). Furthermore, the defendant in *Schwintz* had two working rear brake lights; it was his high-mounted brake light that was inoperable. *Schwintz*, 413 S.W.3d at 193. In *Schwintz*, the court relied on section 547.3215 of the transportation code, which adopted the federal equipment safety standards, for the proposition that a vehicle needed "two working rear-mounted stop lamps and a center high-mounted stop lamp." *Id.* at 194. Whether section 547.323 requires two operable rear-mounted brake lights is, therefore, dictum in *Schwintz*.

In *Garza v. State*, the defendant argued that because his right rear-mounted brake light and high-mounted brake light on the cab of his truck worked,

11

he complied with section 547.323. *See* 261 S.W.3d 361, 368 (Tex. App.—Austin 2008, pet. ref'd), *cert. denied*, 558 U.S. 849 (2009). The court wrote, "Section 547.323 of the transportation code specifies that a car manufactured or assembled after 1959 must be equipped with at least two functioning stoplamps, mounted on the rear of the vehicle." *Id.* (footnote omitted). This statement, however, is dictum, because thereafter the court relies on section 547.3215 of the transportation code, which (as noted earlier) adopted the federal standards requiring two rear-mounted brake lights and a third high-mounted brake light. *Id.* at 369.

In *Starrin v. State*, the defendant's left rear-mounted brake light was not working, but his right rear-mounted brake light and the brake light in the center of his rear window were working, so he argued his vehicle was in compliance with section 547.323(a). No. 02-04-00360-CR, 2005 WL 3343875, at *1 (Tex. App.—Fort Worth 2005, no pet.) (mem. op., not designated for publication). Citing section 547.3215 of the transportation code, we held that the trial court properly denied Starrin's motion to suppress because he was in violation of both state and federal law. *Id.* In *Starrin*, we relied on section 547.3215, not section 547.323.

Section 543.001 of the transportation code authorizes any peace officer to arrest without a warrant a person found committing a violation of subtitle C (Rules of the Road). Tex. Transp. Code Ann. § 543.001 (West 2011); *see State v. Gray*, 158 S.W.3d 465, 469 (Tex. Crim. App. 2005). Chapter 547 falls within subtitle C (Rules of the Road). Tex. Transp. Code Ann. §§ 541.001–.802 (West

12

2011 & Supp. 2016). Officer Gilbert thought he observed a violation of subsections (a) and (c) of section 547.323 of the transportation code. However, what Officer Gilbert saw was not a violation of subsections (a) and (c). Section 547.323(a) requires two working brake lights. *Id.* § 547.323(a). Appellee had two working brake lights. Section 547.323(c) requires one brake light on the rear of the vehicle. *Id.* § 547.323(c). Appellee had that as well.

### B. Section 547.3215 Would Apply But was Not Preserved

The State next argues that Officer Gilbert had reasonable suspicion because, although never mentioned at the suppression hearing, all three brake lights are required under the federal equipment standards that the Texas Legislature adopted in another statute—section 547.3215 of the transportation code (repeatedly mentioned in the previously-discussed cases). *See id.* § 547.3215 (West 2011). Section 547.3215(1) requires compliance with "the current federal standards in 49 C.F.R. Section 571.108." *Id.* § 547.3215(1). Section 571.108 of Title 49 of the Code of Federal Regulations requires two brake lights on the rear of the vehicle and one high-mounted brake light (or two high-mounted brake lights under specified circumstances). 49 C.F.R. § 571.108 (2016).[3] The State cites three cases, all of which support the proposition that a

---

[3]We rely on "Table 1-a Required Lamps and Reflective Devices" of section 571.108 of Title 49 of the Code of Federal Regulations. When comparing the simplicity of section 547.323 of the Texas Transportation Code with the complexity of section 571.108 of Title 49 of the Code of Federal Regulations, we need not wonder why the State opted to proceed under section 547.323 of the Texas Transportation Code.

violation of section 547.3215 provides reasonable suspicion.  *See Schwintz*, 413 S.W.3d at 193; *Garza*, 261 S.W.3d at 368–69; *Starrin*, 2005 WL 3343875, at \*1.

We agree that if section 547.3215 had been relied upon by the officer and argued in the trial court, it would have made Officer Gilbert's traffic stop abundantly reasonable.  But nothing at the suppression hearing—not Officer Gilbert's testimony and not the argument of counsel—presented that theory to the trial court.  In this case, the State effectively relied strictly on subsections (a) and (c) of section 547.323 of the transportation code.  Elsewhere in the State's brief, it conceded that its failure to rely on section 547.3215 at trial precludes it from relying on that provision here on appeal.  Any reliance on section 547.3215 was not preserved.  *See* Tex. R. App. P. 33.1; *State v. Mercado*, 972 S.W.2d 75, 78 (Tex. Crim. App. 1998) (holding that in cases in which the State is the party appealing, the basic principle of appellate jurisprudence that contentions not argued at trial are deemed to be waived applies equally to the State and the defense).  Because the State did not rely on section 547.3215 at trial, it may not rely on it now.  *See Mercado*, 972 S.W.2d at 78.

### C. Officer Gilbert's Construction was Reasonable; Therefore, There was No Fourth Amendment Violation under *Heien v. North Carolina*

The State also relies on *Heien v. North Carolina*, 135 S. Ct. 530 (2014).  In *Heien*, a police officer stopped a vehicle after seeing that one of the brake lights did not function.  135 S. Ct. at 534.  The North Carolina Supreme Court assumed that there was no brake light violation because the North Carolina Court of

14

Appeals had held that driving with only one working brake light was not a violation of North Carolina law and because the State did not seek review of the court of appeals's interpretation of the code. *Id.* at 534–35. The North Carolina Supreme Court nevertheless held that the officer could have reasonably, although mistakenly, read the vehicle code to require both brake lights to be in good working order. *Id.* at 535. It held that because the officer's mistaken understanding of the vehicle code was reasonable, the stop was valid. *Id.* The United States Supreme Court affirmed. *Id.* at 540. The Supreme Court wrote:

> Heien is correct that in a number of decisions we have looked to the reasonableness of an officer's legal error in the course of considering the appropriate remedy for a constitutional violation, instead of whether there was a violation at all. In those cases, however, we had already found or assumed a Fourth Amendment violation. An officer's mistaken view that the conduct at issue did *not* give rise to such a violation—no matter how reasonable—could not change that ultimate conclusion. Any consideration of the reasonableness of an officer's mistake was therefore limited to the separate matter of remedy.
>
> Here, by contrast, the mistake of law relates to the antecedent question of whether it was reasonable for an officer to suspect that the defendant's conduct was illegal. If so, there was no violation of the Fourth Amendment in the first place.

*Id.* at 539 (citations omitted). The Supreme Court continued:

> Here we have little difficulty concluding that the officer's error of law was reasonable. Although the North Carolina statute at issue refers to "*a* stop lamp," suggesting the need for only a single working brake light, it also provides that "[t]he stop lamp may be incorporated into a unit with one or more *other* rear lamps." The use of "other" suggests to the everyday reader of English that a "stop lamp" is a type of "rear lamp." And another subsection of the same provision requires that vehicles "have all originally equipped rear lamps or the

15

equivalent in good working order," arguably indicating that if a vehicle has multiple "stop lamp(s)" all must be functional.

The North Carolina Court of Appeals concluded that the "rear lamps" discussed in subsection (d) do not include brake lights, but, given the "other," it would at least have been reasonable to think they did. Both the majority and the dissent in the North Carolina Supreme Court so concluded, and we agree. This "stop lamp" provision, moreover, had never been previously construed by North Carolina's appellate courts. It was thus objectively reasonable for an officer in [this officer's] position to think that Heien's faulty right brake light was a violation of North Carolina law. And because the mistake of law was reasonable, there was reasonable suspicion justifying the stop.

*Id.* at 540 (citations omitted).

*Heien* is indistinguishable. Like *Heien*, we have an officer who was mistaken in his construction of the statute. If anything, Officer Gilbert was in a more reasonable position that the officer in *Heien*. In *Heien*, the statute had not previously been construed by the appellate courts. *Id.* Here, the trial court acknowledged Officer Gilbert's construction was reasonable when it stated that the statute was unclear and that "the rear of the vehicle" could mean the rear of the cab or the rear of the bed. Additionally, there was some appellate court authority, although in dicta, for the proposition that section 547.323 required two rear brake lights. *See Schwintz*, 413 S.W.3d at 194; *Garza*, 261 S.W.3d at 368. For decades, vehicles have had two rear brake lights, and it would be reasonable to expect the law to require two rear brake lights. Like the Supreme Court, we have little difficulty concluding that Officer Gilbert's error of law was reasonable. *See Heien*, 135 S. Ct. at 540*.* Where the officer acts reasonably, there is no

16

violation of the Fourth Amendment in the first instance. *See id.* at 539; *see also Perez v. State*, No. 08-13-00024-CR, 2016 WL 323761, at *8 (Tex. App.—El Paso Jan. 27, 2016, pet. filed) (mem. op., not designated for publication).

The Texas Court of Criminal Appeals has written, "An officer's mistake about the law, or about the legal significance of undisputed facts, *even if* eminently reasonable, cannot serve to provide probable cause or reasonable suspicion; it cannot, in other words, validate an otherwise invalid seizure." *Robinson v. State*, 377 S.W.3d 712, 722 & n.26 (Tex. Crim. App. 2012) (relying on case law from the Third and Fifth Circuits). We too have written, "[A]n officer's honest but mistaken understanding of the traffic law which prompted a stop is not an exception to the reasonable suspicion requirement." *Fowler v. State*, 266 S.W.3d 498, 504 (Tex. App.—Fort Worth 2008, pet. ref'd) (relying on Fifth Circuit case law); *see Goudeau v. State*, 209 S.W.3d 713, 716 (Tex. App.—Houston [14th Dist.] 2006, no pet.) ("An officer's suspicion of an alleged traffic violation, however, cannot be based on a mistaken understanding of traffic laws."). *Heien*, therefore, represents a departure from established jurisprudence. Because Officer Gilbert's mistake of law was reasonable, we must hold, under *Heien*, that the trial court erred by granting Appellee's motion to suppress. *See Heien*, 135 S. Ct. at 540.

**VI. Conclusion**

Accordingly, we sustain the State's three points, reverse the trial court's order granting Appellee's motion to suppress, and remand the cause to the trial court for further proceedings consistent with this opinion.

/s/ Anne Gardner
ANNE GARDNER
JUSTICE

PANEL:  GARDNER, MEIER, and SUDDERTH, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  August 31, 2016

18